Jeffrey M. Proper
**JEFFREY M. PROPER, PLLC**
10645 N. Tatum Blvd, Suite 200-652
Phoenix, AZ 85028
State Bar #003099
(602) 235-9555
Fax: (602) 235-9223
Email: jeff@jproper.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID ZOWINE; | Civil Action No. 2:14-cv-00892-GMS |
| Plaintiff, | **DECLARATION OF DAVID ZOWINE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| GEORGE PRUSSIN and JANE DOE PRUSSIN, his wife.; and JOHN and JANE DOES I-X, ABC CORPORATIONS I-X; ABC PARTNERSHIPS I-X; and ABC LIMITED LIABILITY COMPANIES I-X; | **(Oral Argument Requested)** |
| Defendants. | |

COMES NOW, Plaintiff DAVID ZOWINE ("ZOWINE"), by and through

undersigned counsel, and hereby moves this Court for partial summary judgment on the

Plaintiff's claims: (1) that the actions and omissions of Defendant GEORGE PRUSSIN

("PRUSSIN"), as alleged, constitute the sale of unregistered securities under Arizona law;

and, (2) that Defendant PRUSSIN is liable under Plaintiff's Arizona civil RICO claim

(A.R.S. § 13-2314.04) for engaging in a pattern of unlawful activity relating to his sale of unregistered securities.

Plaintiff's *Motion* is brought pursuant to Rule 56(a) Fed. R. Civ. P., and upon the grounds that there is no genuine dispute as to any material fact and Plaintiff is entitled to judgment as a matter of law upon the above mentioned claims.  In accordance with Rule 56.1 LRCiv., Plaintiff submits a *Separate Statement of Facts* ("*PSSOF")* together with this *Motion,* setting forth the undisputed facts necessary for the Court to resolve this *Motion*.

Plaintiff's *Motion* is further supported by the *Plaintiff's Declaration In Support Of Motion For Partial Summary Judgment* ("*Pltf. Decl.*") and *Declaration Of Chris Preisel In Support Of Plaintiff's Motion For Partial Summary Judgment* ("*Preisel Decl.*"), including all attachments thereto, which are filed concurrently with this *Motion*.

In accordance with Rule 56(a) FRCP, Plaintiff respectfully requests that the Court state on the record the reasons for granting or denying the *Motion*.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF MATERIAL FACTS

Over past several years, Defendant GEORGE PRUSSIN ("PRUSSIN") has solicited and promoted the sale of certain investment contracts to Plaintiff DAVID ZOWINE ("ZOWINE"). *PSSOF* ¶ 9, 11, 12. These investment contracts were of three distinct types. The first involved investment in membership interests of certain limited liability companies which were engaged in the business of "pre-settlement funding products."  *PSSOF* ¶ 4,5. The second type of investment contracts involved so called "Special Deals" which involved the placement of investment funds directly with PRUSSIN for the purposes of funding

litigation in certain specified cases. *PSSOF* ¶ 10.  The third type of investment contract involved an fractional ownership of race horse that was partially owned, managed, trained and raced by PRUSSIN. *PSSOF* ¶ 12, 13.

Plaintiff was never provided any prospectus, private placement memorandum or other disclosure documents for any of the investment contracts offered and sold by PRUSSIN. *PSSOF*  ¶ 14. The securities promoted, offered and sold by PRUSSIN were never registered or otherwise exempted from registration under Arizona securities law. *PSSOF*  ¶ 15.

Plaintiff contends as a matter of law that each of the investment contracts constitutes a "security" as defined by Arizona law and that Defendant PRUSSIN has therefore engaged in the unlawful offer and sale of unregistered securities in violation of Arizona securities law.  These violations, in turn, make Defendant PRUSSIN liable as a matter of law under Plaintiff's claim under the Arizona civil RICO statute. A.R.S. § 13-2314.04.

## II.    STANDARDS FOR AWARD OF SUMMARY JUDGMENT

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id*. at 255 (*citing Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. See

*Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).


### III.    ARGUMENT IN FAVOR OF SUMMARY JUDGMENT

### A. The Investment Contracts Offered and Sold to Plaintiff by Defendant PRUSSIN are "Securities" as defined under Arizona Law.

Whether Defendant PRUSSIN's activities in soliciting and promoting the sale of certain financial investments to Plaintiff ZOWINE fall within the ambit of Arizona's securities laws depends primarily on whether the actual investments promoted and sold may be fairly characterized as "securities" under Arizona law.  Whether an instrument is a security is a question of law. *Nutek Information Systems, Inc. v. Arizona Corp. Com'n*, 194 Ariz. 104,    ¶14, 977 P.2d 826, 829 (App. 1998); *Vairo v. Clayden*, 153 Ariz. 13, 18, 734 P.2d 110, 115 (App.1987); *Daggett v. Jackie Fine Arts, Inc*., 152 Ariz. 559, 564, 733 P.2d 1142, 1147 (App.1986).

A "security" is broadly defined under Arizona law to include *inter alia*:

> any note, stock, treasury stock, bond….debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*… or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.  A.R.S. § 44-1801(26).

This definition is substantially similar to the definition of "securities" in both the Securities Act of 1933 and the Securities and Exchange Act of 1934. *Nutek* at ¶ 16, 830; Securities Act

of 1933, 15 U.S.C.A. § 77(b)(a)(1); Securities Exchange Act of 1934, 15 U.S.C.A. § 78(c)(a)(10).  Arizona courts therefore look to federal courts for guidance in interpreting the statute. *Id. citing Vairo*, 153 Ariz. at 17, 734 P.2d at 114; *see also Rose v. Dobras,* 128 Ariz. 209, 211, 624 P.2d 887, 889 (App.1981).  The nature of the investments solicited and promoted by Defendant clearly fall within the ordinary meaning of an "investment contract."  The narrower question then becomes whether the particular investment contracts sold or promoted by Defendant constitute a security under Arizona law?

The U.S. Supreme Court has held that an investment contract is a security if a person (1) invests money (2) in a "common enterprise" and (3) is led to expect profits solely from the efforts of the promoter or a third party. *S.E.C. v. W.J. Howey Co*., 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *accord Nutek* 194 Ariz. ¶ 17, 977 P.2d 830; *Vairo,* 153 Ariz. at 17, 734 P.2d at 114; *Rose*, 128 Ariz. at 211, 624 P.2d at 889; *Daggett*, 152 Ariz. at 565, 733 P.2d at 1148. The Court has also noted that the definition of a security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey*, 328 U.S. at 299, 66 S.Ct. 1100; *accord Rose*, 128 Ariz. at 212, 624 P.2d at 890. Thus, "substance controls over form." *Nutek,* 194 Ariz. ¶17.

Defendant has promoted and sold essentially three different types of investment contracts to Plaintiff. These include: (1) "The Law Funder LLC Investments" which involved the Plaintiff's purchase of certain membership interests in two limited liability companies engaged in the business of providing "pre-settlement funding products"; (2) "Special Deals" which involved investments placed with directly with Defendant for the

purposes of providing pre-settlement funding in specific civil litigation cases; and, (3) "Racehorse Investment" which involved the Plaintiff's purchase of a fractional interest in a racehorse owned and managed by Defendant PRUSSIN.  As addressed below, all three types of investment contracts meet the requirements for properly being classified as a "security" under Arizona law.

### (1)  The Law Funder LLC ("TLF") Investment Contracts are Securities.

In the first set of investment contracts sold and promoted by Defendant PRUSSIN, Plaintiff ZOWINE invested in certain "membership units" in two foreign limited liability companies that were engaged in the business of dealing in pre-settlement funding products. In such a situation, the first two prongs of the *Howey* test are easily satisfied as Plaintiff has actually made investments in a "common enterprise" which is the limited liability company itself.

The third prong of the *Howey* test is slightly more difficult to show in these circumstances because the owner of membership interest in a limited liability company ordinarily is presumed to have the ability to exercise his membership rights and is thereby not necessarily dependent solely upon the efforts of others.  However, the burden is met where the investor-member is dependent on the promoter or manager for the effective exercise of his membership powers. "If, for example, the [member] has irrevocably delegated his powers, or is incapable of exercising them, or is so dependent on the particular expertise of the promoter or manager that he has no reasonable alternative to reliance on that person, then his [membership] powers may be inadequate to protect him from the dependence on others which is implicit in an investment contract."  *Nutek* at ¶ 19, 831,

*citing Williamson v. Tucker*, 645 F.2d 404, 422-23 (5th Cir. 1981). The court should "look beyond corporate form to the substance of the transaction in deciding whether the securities laws apply to it." *Nutek*, ¶ 19, 831.

Following the analysis in *Williamson*, the *Nutek* court adopted three non-exclusive factors which could demonstrate that a limited liability company membership interest was a security: (1) that an agreement among the parties leaves so little power in the hands of the member that the arrangement in fact distributes power as would a limited partnership; or (2) the member is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his membership powers; or (3) the member is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful membership powers. *Nutek* at ¶ 20, 831.

In the present case, all three factors are present with respect to the TLF investment contracts. First, Plaintiff ZOWINE's participation in the limited liability companies was subject to the business model developed by Defendant PRUSSIN that left management of the company in the hands of Safari Investments LLC and the operation of the litigation funding activities in the hands of TLF. *PSSOF* ¶ 4. In determining the existence of the business model, the Court may look to not only the formal articles of organization but also to "…other documents structuring the investment, to promotional materials, to oral representations made by the promoters at the time of the investment, and to the practical possibility of the investors exercising the powers they possessed pursuant to the [LLC] agreements." *Id.* Here, the promotional and other materials submitted into the record

establish that Plaintiff was purposefully only a passive investor subject to the management and operational authority vested in Safari Investments LLC and TLF. *PSSOF* ¶ 4 .

As to the second factor, Plaintiff ZOWINE's general business acumen is irrelevant. The Arizona courts have adopted an approach that considers only the investor's meaningful knowledge of the specific business being operated. *Nutek*, ¶ 26-28, 832-33, *citing Long v. Shultz Cattle Co.*, 881 F.2d 129, 134 n. 3 (5th Cir. 1989).  Here, Plaintiff has specifically disavowed any meaningful knowledge or understanding of the pre-settlement funding products industry. *Plaintiff's Decl*. ¶ 5. Thus, the second *Nutek/Williamson* factor, an unsophisticated investor, is also present.

The third *Nutek* factor relating to unique entrepreneurial or managerial ability of the promoter or manager is also present in the TLF investment contracts.  Plaintiff ZOWINE necessarily had to rely on the expertise of TLF to service the operation of the limited liability companies' dealings in pre-settlement funding products. In light the pooled investment nature of the membership interests, only the centralized management of Safari Investments LLC could make the limited liability companies a viable business operation. Moreover, TLF was the "heart" of the business operations and the companies could not function profitably without the substantial participation and expertise of TLF. This is not a case where TLF performed primarily ministerial duties and could be easily replaced by the members. In sum, the investor-members like Plaintiff were necessarily dependent upon the unique entrepreneurial and managerial skills of Safari Investments LLC and TLF.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In conclusion, all of the *Nutek/Williamson* factors are present and amply demonstrated in the record before the Court. Therefore, the TLF investment contracts are securities as defined under Arizona law.

### (2)   The Special Deals Investment Contracts are Securities.

The "Special Deals" investment contracts also fall within the definition of "security" under Arizona law.  Here, the first prong of the *Howey* test is met because Plaintiff and others actually deposited investment monies directly with Defendant PRUSSIN for the purposes of funding specially identified civil litigation cases. *See, Preisel Decl.* ¶ 8; *Plaintiff's Decl.* ¶ 6.

As to the second prong of the *Howey* test, the determination of whether there is a "common enterprise" depends upon whether there is vertical or horizontal commonality. *SEC v. R.G. Reynolds Ent., Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1991). Horizontal commonality occurs where investors pool their assets and "give up any claim to profits or losses attributable to their particular investments in return for a pro rata share of the profits of the enterprise." *Hocking v. Dubois*, 885 F.2d 1449, 1459 (9th Cir. 1989). Vertical commonality is "an enterprise common to an investor and seller, promoter, or some third party" and can be shown when "the fortunes of the investors are linked with those of the promoters." *R.G. Reynolds*, 952 F.2d at 1130. In Arizona, the "common enterprise" prong is met by satisfaction of either test. *Daggett*, 152 Ariz. 566, 733 P.2d 1149. Here, the vertical commonality test is met because the Plaintiff's return on his investment was directly tied to PRUSSIN's management of the investment.  There exists a positive correlation between the

success of the investor and the success of the promoter. Hence, a common enterprise does exist. *Sullivan v. Metro Productions, Inc*., 150 Ariz. 573, 724 P.2d 1242 (App.1986).

The third prong of the *Howey* test is met because the investment funds were managed directly by PRUSSIN and/or TLF, which may not be much of a distinction as PRUSSIN was directly involved in the management and control of TLF. *PSSOF* ¶   ,*Preisel Decl*. ¶ 6; *Plaintiff's Decl*. ¶ 6. It is not necessary that the efforts be those of the promoter. *Daggett* at 566, 1149, citing *Continental Marketing Corp. v. S.E.C*., 387 F.2d 466 (10th Cir.1967). Viewing the undisputed facts, it is clear that the success of Plaintiff's investment was inescapably tied to the efforts of PRUSSIN. Plaintiff was never in a position to market litigation funding himself. Although he was not strictly obligated to rely on the efforts of others, economic reality would require just that.

Thus the three "Special Deals" solicited and promoted by Defendant PRUSSIN each constitute a security as defined by Arizona law.

### (3)   The Racehorse Investment Contract is a Security.

The "Racehorse" investment contract additionally falls within the definition of "security" under Arizona law.  Once again, the first prong of the *Howey* test is met because Plaintiff actually deposited investment monies directly with Defendant PRUSSIN in return for a fractional interest in "Duke's Dream." *PSSOF* ¶  12 ;*Plaintiff's Decl*. ¶ 7.  The second prong is met because there is clearly vertical commonality.  Plaintiff's anticipated return on investment was inextricably tied up in Defendant PRUSSIN's success in managing and racing the horse. The third *Howey* prong is met because Plaintiff had no participation in managing the boarding, upkeep, training and racing of the horse and had to rely solely upon

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the efforts of Defendant PRUSSIN and other employed or directed by him. *Plaintiff's Decl.* ¶ 7.  Plaintiff had no prior experience or knowledge of the horse racing industry and was therefore wholly dependent upon the expertise and experience of Defendant PRUSSIN. Thus, upon the undisputed facts submitted herein, the Racehorse investment contract also constitutes a security under Arizona law.

**B. Defendant PRUSSIN has Engaged in the Unlawful Offer and Sale of Unregistered Securities .**

In general, a security cannot be lawfully offered and sold to a resident of this state unless it is properly registered with the Arizona Corporation Commission ("ACC"). *See*, A.R.S. § 44-1841(A).  The ACC has the statutory authority  to exempt certain securities from registration with the Commission pursuant to A.R.S. § 44-1846, provided that the issuer of the securities to be exempted files a proper "disclosure document" as prescribed by the ACC, which must include a financial statement and minimum standards for investor suitability.  *See*, A.R.S. § 44-1846(B).  Until such time as the requirements for filing a disclosure document with the ACC are satisfied, the securities solicited, offered, and issued to the Plaintiff were not exempt from regulation and registration with the ACC under Arizona's securities laws. It is undisputed that Defendant PRUSSIN never registered or properly obtained exemption for the securities offered and sold to Plaintiff.

In addition, it is undisputed that Plaintiff never received a prospectus, private placement memorandum or disclosure statement in connection with his investment in any of the securities solicited and promoted by Defendant PRUSSIN. *See, Verified Complaint* ¶ 24; *Plaintiff's Decl*. ¶ 5.  Plaintiff was therefore solicited, offered, and sold securities without

the filing of proper disclosure documents with the ACC, and therefore, Defendant PRUSSIN and has "offered and sold" unregistered securities in direct violation of A.R.S. § 44-1841(A).  Such unlawful conduct constitutes a class 4 felony offense pursuant to A.R.S. § 44-1841(B).

### C.  Defendant PRUSSIN is Liable as Matter of Law Under Plaintiff's Civil RICO Claim.

Plaintiff's civil RICO claim is based on A.R.S. § 13-2314(A), which provides a remedy for one who sustains an injury by "unlawful acts" as defined by A.R.S. § 13-2301(D). A.R.S. § 13-2301(D)(4)(s) defines such "unlawful acts" to include the sale of unregistered securities by an unregistered dealer or salesman. It should be noted that unlike the Federal Anti-Racketeering statute, 18 U.S.C. §§ 1961-1968, Arizona's RICO does not necessarily require that a defendant maintain an interest in, or control of, an enterprise in order to allow a remedy for a plaintiff.  Although Arizona's RICO permits recovery of damages for harm resulting from enterprise involvement, a plaintiff can also recover damages where a defendant commits a predicate offense, as enumerated by A.R.S. § 13-2301(D)(4), for financial gain and the predicate offense is punishable by imprisonment for more than one year. *Daggett*, 152 Ariz. 564-5, 733 P.2d 1142.   Therefore, Arizona RICO applies to individuals and companies who merely commit predicate offenses as well as to organized crime groups. *Id.*, *citing State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 667 P.2d 1304 (1983). This is exactly the situation in the instant case, the alleged predicate offense being PRUSSIN's sale of an unregistered securities to Plaintiff.

Plaintiff has properly pled the prima facie elements of liability under A.R.S. § 13-2314.04 in the *Verified Complaint* and is entitled to summary judgment on the issue of liability.

## IV.    CONCLUSION

Wherefore, Plaintiff respectfully requests award of partial summary judgment on the claims addressed in this Motion.

RESPECTFULLY SUBMITTED this 29th day of May, 2015

JEFFREY M. PROPER, PLLC

*/s/ Jeffrey M. Proper*
Jeffrey M. Proper
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2015, I electronically transmitted the foregoing

document to the Clerk of the Court for the District of Arizona using the ECF System for

filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Alethia Scipione
Callagy Law, LLC
668 North 44th Street
Suite 300
Phoenix, AZ  85008
Attorney for Defendant George Prussin


By:_/s/ Jeffrey M. Proper___
   Jeffrey M. Proper