**CALLAGY LAW, P.C.**
Alethia Scipione, Esq. 026102
668 N 44th Street, Suite 300
Phoenix, AZ 85008
Michael J. Smikun, Esq. (admitted *pro hac vice*)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, NJ 07652
Phone: (201) 261-1700
Fax:    (201) 549-6311
ascipione@callagylaw.com
msmikun@callagylaw.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **DAVID ZOWINE,** ) | Civil Action No.: |
| **Plaintiff,** ) | |
| ) | 2:14-cv-00892-GMS |
| **v.** ) | |
| ) | |
| **GEORGE PRUSSIN and JANE DOE PRUSSIN,** ) | **DEFENDANTS' RESPONSE TO** |
| **his wife.; and JOHN and JANE DOES I-X, ABC** ) | **PLAINTIFF'S AMENDED MOTION** |
| **CORPORATIONS I-X; AB PARTNERSHIPS I-** ) | **FOR PARTIAL SUMMARY** |
| **X;   and   ABC   LIMITED   LIABILITY** ) | **JUDGMENT** |
| **COMPANIES I-X;** ) | |
| ) | |
| **Defendants.** ) | |

Defendants George Prussin and Jane Doe Prussin (collectively, "Defendant Prussin" or "Prussin") hereby submit their response to Plaintiff David Zowine ("Plaintiff" or "Zowine") Amended Motion for Partial Summary Judgment ("Motion").

## I.    PRELIMINARY STATEMENT

Plaintiff's Motion rises and falls on the notion that Defendant sold to Plaintiff "securities" as defined under Arizona Law. Plaintiff claims that Prussin sold three types of

securities in the form of investment contracts: (1) The "Law Funder LLC" investments; (2) the "Special Deals" investments; and (3) the "Racehorse" investment. However, Plaintiff makes a number of critical errors, both procedurally and legally, that outright bar his claims.

Plaintiff's Motion must be denied because his claims are time barred by the statute of limitations, which he readily conceded as to some claims when responding to *Defendant's Motion for Summary Judgment*.

Moreover, Plaintiff's motion contains a fatal defect as he does not have standing to bring an action against Defendant under A.R.S. § 13-2314(A) as he is neither the Attorney General nor County Attorney, a threshold issue which cannot be overcome.

Even if Plaintiff was to survive these fatal defects, Plaintiff has still failed to carry his burden to show, without a genuine issue of material fact, that Defendant has sold securities, let alone unregistered securities. Terms like solicit, promote, sale and securities are all terms of art when it comes to securities laws and regulations.  Here, the three investments were not securities because there is, at minimum, a genuine issue of material fact as to whether Plaintiff retained sufficient control over his investments. Further, there is, at minimum, a genuine issue of material fact as to whether Defendant has made a "sale" within the meaning of Arizona law because he derived no value for Plaintiff's investments; even if Defendant had made a "sale," the "securities" were exempt from registration as there is, at minimum, a genuine issue of material fact as to whether the investments were a private placement.

Additionally, even if Plaintiff did have standing to assert a claim under the Civil RICO statute as set forth above, Defendant cannot be liable under a Civil Rico claim for "selling unregistered securities" for the above reasons.

Finally, assuming, *arguendo*, that Plaintiff did have a viable cause of action, Plaintiff has sued the wrong party because Defendant is protected as a partner of an LLC wherein he acted in his professional capacity.

## II.   STATEMENT OF DISPUTED FACTS

Defendant Prussin relies on the Controverting Statement of Undisputed Facts and Additional Material Facts filed this same day.

## III.   LEGAL STANDARD

"Summary judgment is inappropriate unless there are no genuine factual issues and the movant is entitled to judgment as a matter of law, Rule 56(c), or unless the facts supporting a plaintiffs claim 'have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim.'" *Knauss v. DND Neffson Co.*, 192 Ariz. 192, 194 (1997) (reversing in part, and affirming in part, grant of summary judgment) (citation omitted); *see also Soremekun v. Thirft Payless, Inc.*, 509 F.3d 978 ("Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party"). In determining whether there are any factual issues that preclude entry of summary judgment, the Court must review all matters in the light most favorable to the non-moving party. *Doe v. Roe*, 191 Ariz. 313, 324, 955 P.2d 951, 962 (1998); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). All evidence of the non-moving party must be believed, and the Court must draw all justifiable inferences in the non-moving party's favor. *Sanchez v. City of Tucson*, 191 Ariz. 128, 130, 953 P.2d 168, 170 (1998); *Anderson* 477 U.S. at 255. Summary judgment is not a substitute for trial, even if it

3

seems likely that the moving party will prevail at trial. *Orme School v. Reeves*, 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990).

Here, Plaintiff, as the moving party, has the burden of showing that there are no genuine issues of material fact and they are conclusively entitled to judgment as a matter of law. Plaintiff's Motion fails to carry this heavy burden, and should be denied.

## IV. **LEGAL ARGUMENT**

### A.   **PLAINTIFF'S A.R.S. § 44-1841(A) CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS**

Plaintiff brings this summary judgment motion claiming that Defendant has sold securities in violation of A.R.S. § 44-1841(A). *Motion* at 12. However, as a threshold matter, Plaintiff is barred from bringing this action pursuant to the one year statute of limitations for an A.R.S. § 44-1841(A) violation. *See* A.R.S. § 44-2004(A) ("No civil action shall be maintained under this article to enforce any liability based on a violation of section 44-1841 or 44-1842 unless brought within one year after the *violation* occurs") (emphasis added). Plaintiff's own evidence shows that the alleged violation – i.e. the sale of unregistered securities – occurred over a year prior to filing of this suit in March of 2014. The latest complained of investment, the race horse investment, occurred "in or around September 2010." *Plaintiff's Declaration in Support of Motion for Partial Summary Judgment* ¶7.

Furthermore, Plaintiff has already, when responding to *Defendant's Motion for Summary Judgment*, Dkt. No. 41, "concede[d] that its claim for rescission under A.R.S. §2001(A), to the extent it is based on an *alleged violation of A.R.S. § 44-1841*, is time barred by A.R.S. § 44-2004(a), which establishes a one-year statute of limitations such claims." *Plaintiff Response to Defendants Motion for Summary Judgment*, Dkt. No. 50 at 3 (emphasis

added). Although the claimed remedy is different – a claim of rescission under A.R.S. §2001(A) versus a A.R.S. § 13-2314(A) violation – the same underlying statute is implicated in both allegations: *A.R.S. § 44-1841*. Accordingly, Plaintiff's apparent concession must also extend to its current claim and thus this claim must be found to be time barred as well.

While Plaintiff may argue that he cannot be penalized for concessions he made at a later date that make its previous argument frivolous, Plaintiff should have withdrawn his current motion when he realized that his argument was, in fact, frivolous. By failing to do so – for a full month after its response – Plaintiff caused Defendant to expend valuable time and effort to respond to a now frivolous argument. Accordingly, Defendant reserves its right to move for attorneys fees and costs and other appropriate sanctions at a later date.

**B.    PLAINTIFF'S A.R.S. § 13-2314(A) CLAIM IS BARRED BECAUSE HE IS NOT THE APPROPRIATE PARTY TO BRING THIS ACTION**

Plaintiff brings this summary judgment motion claiming that Defendant has sold securities in violation of A.R.S. § 44-1841(A) and has consequently violated Arizona's civil RICO statute, A.R.S. § 13-2314(A). Motion at 13. Assuming, *arguendo*, that a claim under A.R.S. § 44-1841(A) is not barred by the one-year statute of limitations, Plaintiff's action must still fail. Specifically, Plaintiff has *grossly* misstated the applicable law.

In full, A.R.S. § 13-2314(A) reads:

> The *attorney general or a county attorney may file an action* in superior court *on behalf of a person* who sustains injury to his person, business or property by racketeering as defined by § 13-2301, subsection D, paragraph 4 or by a violation of § 13-2312 for the recovery of treble damages and the costs of the suit, including reasonable attorney fees, or to prevent, restrain, or remedy racketeering as defined by § 13-2301, subsection D, paragraph 4 or a violation of § 13-2312. *If the person against whom a racketeering claim has been asserted*, including a forfeiture action or lien, *prevails on that claim, the person may be awarded costs and reasonable*

*attorney fees incurred in defense of that claim.* In actions filed by the state or a county, awards of costs and reasonable attorney fees are to be assessed against and paid from monies acquired pursuant to §§ 13-2314.01 and 13-2314.03.

A.R.S. § 13-2314(A) (emphasis added). Plaintiff has filed this cause of action himself, through his counsel Jeffery M. Proper. Upon information and belief, neither Plaintiff nor Mr. Proper are the "attorney general or a county attorney." Therefore, this claim must fail as a matter of law.

Further, due to how explicitly A.R.S. § 13-2314(A) limits who may bring this cause of action, Defendant can only assume that this claim was brought in bad faith. Due to the frivolous nature of this action and this very suit, Defendant contends that this Court should, *sua sponte*, award costs and attorney fees to Defendant in defending this claim. A.R.S. § 13-2314(A) ("If the person against whom a racketeering claim has been asserted…prevails on that claim, the person may be awarded costs and reasonable attorney fees incurred in defense of that claim").

## C. PLAINTIFF HAS FAILED TO ESTABLISH THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE THREE SALES WERE "SECURITIES" FOR THE PURPOSES OF PLAINTIFF'S CAUSES OF ACTION.

Regardless, even if the Court were to overlook Plaintiff's deficiencies addressed in the above two sections, Plaintiff has still failed to establish, without a genuine issue of material fact, that Defendant has "sold unregistered securities" within the meaning of Arizona law.

Under Arizona law, an "investment contract" is a type of security. A.R.S. § 44-1801(23); *see also Nutek Information System, Inc. v. Arizona Corp. Com'n*, 194 Ariz. 104, 108 (App. 1998); *see Dagget v. Jackie Fine Arts, Inc.*, 152 Ariz. 559, 565 (App. 1986) (State Court looks to federal interpretations of securities law for guidance). Following Supreme Court

precedent in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), Arizona adopted a three pronged approach to defining an "investment contract": that there be "'(1)  an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others.'" *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (quoting *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003)). When analyzing a security, Court's apply an objective standard; consequently, "the transaction must be characterized at the time when it transpired." *Dagget*, 152 Ariz. at 565 (internal citations omitted).

The first prong, "investment of money," "requires that the investor commit his assets to the enterprise in such a manner as to subject himself to financial loss.'" *Warfield*, 569 F.3d at 1021 (internal quotation marks omitted) (citing *Rubera*, 350 F.3d at 1090 (quoting *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976) (per curiam))).

> [W]hile the subjective intent of the purchasers may have some bearing on the issue of whether they entered into investment contracts, [the Court] must focus [its] inquiry on what the purchasers were offered or promised. Under *Howey*, courts conduct an objective inquiry into the character of the instrument or transaction offered based on what the purchasers were led to expect. However, an investment scheme promised a fixed rate of return can be an "investment contract."

*S.E.C. v. Edwards*, 540 U.S. 389, 397 (2004) (internal citations omitted).

Under the second prong, a common enterprise exists if there is either vertical commonality or horizontal commonality. *Bobrowski v. Red Door Group*, 3555712 WL *2 (D. Ariz. 2011) (citing *SEC v. R.G. Reynolds Ent., Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1991)); *see also Daggett* 152 Ariz. at 565. "Horizontal commonality occurs where investors pool their assets and 'give up any claim to profits or losses attributable to their particular investments in return for a pro rata share of the profits of the enterprise.'" *Bobrowski* 3555712 WL at *2

(quoting *Hocking v. Dubois*, 885 F.2d 1449, 1459 (9th Cir. 1989)); *see also Daggett*, 152 Ariz. at 565 ("Horizontal commonality requires a pooling of investor funds collectively managed by a promoter or third party"). "Vertical commonality is 'an enterprise common to an investor and seller, promoter, or some third party' and can be shown when 'the fortunes of the investors are linked with those of the promoters.'" *Bobrowski* 3555712 WL at *2 (quoting *R.G. Reynolds*, 952 F.2d at 1130)); *see also Daggett*, 152 Ariz. at 565 ("Vertical commonality requires a positive correlation between the success of the investor and the success of the promoter, without requiring a pooling of funds"). The Court should not ignore the second prong even if the third prong is met. *Daggett* 152 Ariz. at 565.

"The third prong of this test, requiring 'an expectation of profits produced by the efforts of other,' involves two distinct concepts: whether a transaction involves any expectation of profit and whether expected profits are the product of the efforts of a person other than the investor." *Warfield* 569 F.3d at 1020. "The efforts of others must be those which affect the failure or success of the investment…. However, it is not necessary…that the efforts be those of the promoter." *Daggett* 152 Ariz. at 566.  Further, the "efforts of others" must be the "'undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'" *Nutek*, 194 Ariz. at 108 (quoting *SEC v. Glenn w. Turner Enters. Inc.*, 474 F.2d 476, 482 (9th Cir. 1973)).

### 1.  The Law Funder, LLC, investment ("LLC Investment") does not satisfy the third prong *Howey*

Defendant contends that Plaintiff has failed to carry his burden to show, without any genuine issue of material fact, that the LLC Investment was a security at least because the LLC Investment does not satisfy the third prong; specifically, that there was no expectation of

profits produced by the efforts of others. Plaintiff appears to concede that, at least for the LLC investment, the arrangement in question was in fact more akin to a "partnership" or "joint venture," such that Plaintiff had, to some extent, a controlling power in the investment. *See* Motion at 7-8.[1]

As the Plaintiff himself acknowledges, a membership interest in a limited liability company carries with it the presumption that the member has power over the company. Motion at 7. That burden is difficult to overcome. *Nutek*, 194 Ariz. at 108-109. If the alleged security stems from a general partnership or joint venture, Arizona has adopted the Fifth Circuit's test set out in *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) when analyzing the third prong of *Howey*. *Nutek*, 194 Ariz. at 108-109.

> A general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venture that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venture is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venture is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Id.* (quoting *Willaimson*, 645 F.2d at 424). "This list is not exhaustive; other facts may come into play. Furthermore, these factors are not viewed in isolation; the transaction is considered as a whole." *Nutek*, 194 Ariz. at 109 (citing to *Koch v. Hankins*, 928 F.2d 1471, 1476-78 (9th Cir. 1991)). In short, "securities laws will apply when the transaction prevents the partners

---

[1] In the event that Plaintiff denies that it is a partnership, Defendant respectfully directs the Court to page 3 of Dkt. No 39-2, the Lion Cub, LLC Executive Summary. The document clearly states that investors will be receiving K-1 tax documents, which is generally reserved for distributions. Mr. Zowine did indeed receive K-1 distributions. *See e.g.* Exhibit E.

from effectively exercising their partnership powers." *Nutek*, 194 Ariz. at 109. However, "the question of an investor's control over his investment is decided in terms of practical as well as legal ability to control." *Hocking*, 885 F.2d at 1460.

It is important to note that as a backdrop to this analysis, the Court must apply an objective standard; specifically that "the transaction must be characterized at the time when it transpired." *Dagget*, 152 Ariz. at 565 (internal citations omitted).

In the present case, Plaintiff's own evidence suggests that he had sufficient legal and practical control over his investments; specifically, Plaintiff could exercise managerial-like powers to replace The Lawfunder, LLC to the "over 100 companies in the plaintiff funding industry that could be engaged." Dkt. No. 39-4. Court's have found this to be a sufficient amount of control for securities purposes. S*ee e.g., Great Lakes Chemical Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376 (D. Del. 2000) (Having power to remove management authority is sufficient to give plaintiff "the power to directly affect the profits it received from the LLC"). As Plaintiff's own evidence makes clear, an investor in, for example the Lion Cub, LLC – which is the only investment Defendant actually provides evidence of, other than self-serving declarations – is entitled to a vote. Dkt. No. 39-2. As such, at minimum, a genuine issue of material fact exists as to this prong, and therefore this issue must be decided by a jury.

Moreover, the mere fact that Plaintiff chose not to use his voting powers, i.e that Plaintiff was "purposefully only a passive investor," *Motion* at 9, is insufficient to overcome the presumption that accompanies a partnership – a heavy burden that Plaintiff *must* overcome. A party is not "without power" if it voluntarily chooses to not use its power. *See e.g. Holden v. Hagopian*, 978 F.2d 1115 (9th Cir. 1992) (The Court found that the Plaintiffs "chose to be

passive and did not actively utilize the legal powers afforded them by the partnership agreement." This was insufficient to meet the third *Williamson* factor). Any other conclusion would result in *any* partnership agreement turning into an investment contract *at the whim of any of its partners.*

Moreover, "the transaction must be characterized at the time when it transpired." *Dagget*, 152 Ariz. at 565 (internal citations omitted). At the time he entered into this arrangement, and up until the expiration of the arrangement, Plaintiff was fully capable of exercising all of his powers. This fact is especially true in light of the fact that The Law Funder LLC was a widely known company; Plaintiff could have researched the company and chosen not to invest or even invest his money into a different company.

The second factor and third factors similarly have, at minimum, a genuine issue of material fact for the same reasons as the first factor. Namely that Plaintiff had the power to control the managing authority of his investments. The mere fact that he did not have any knowledge in pre-settlement funding investments does not alter the fact that he is an overall experienced business man. *Statement of Controverted Facts* ¶16. His general experience gives him sufficient knowledge in *choosing and evaluating appropriate managing authorities.* Plaintiff is currently the owner and manager of a company generating millions of dollars. *Id.* At the time of these investments, others have identified him and his management of the entity as the reason this company was successful. *Id.* Although *Nutek* held that an investor's lack of specialized knowledge in the specific business might make him incapable of exercising his powers, *Nutek* 194 Ariz. at 110-111, that does not alter the fact that he was a self-proclaimed

savvy business man and he had "over 100 companies" to effectively choose from to manage his investment. Dkt. No. 39-4.

Accordingly, Plaintiff has, at the very least, failed to carry his burden in showing that there is no dispute of material fact that the LLC investment was a security, especially in light of the heavy burden it must carry in overcoming the presumption that a partnership grants him sufficient control over his investment.

### 2. **The Special Deals investment does not satisfy the second or third prong** *Howey*

With regards to the Special Deals Investments, Plaintiff has failed at the outset to establish, without a genuine issue of material fact, that there exists a security at least for the second *Howey* prong. Specifically, Plaintiff claims, without support, that there is a "common enterprise" under the vertical commonality theory because the investment was managed by Prussin. *Motion* at 10. However, unlike what Plaintiff suggests, Defendant did not directly manage any investments associated with "Special Deals"; if anything, that was done by The Law Funder LLC, at least with regard to monitoring the status of the investment. *Statement of Controverted Facts* ¶22. Further, Plaintiff's success was not dependent on Defendant's success because Plaintiff knew which litigation his investment would be going into; consequently, at best, Defendant – or more appropriately Law Funder – was merely the conduit for the investments to flow through into an investment of Plaintiff's choosing. *Id.* Thus, Plaintiff's success was instead tied to the success of the litigators and the merits of the case – not Defendant or Law Funder.

Even assuming, that the second prong of *Howey* is met, the investment fails the third prong, specifically for substantially the same reasons enumerated above. Specifically, Plaintiff

was fully aware, at all times, to what specific litigation his investment would be going to. *Id.* Accordingly, it was Plaintiff's own choice to partake in an investment – an investment he should have investigated. Moreover, Defendant had no control over whether Plaintiff's investment in a litigation of his choosing would be successful or not. Indeed, Defendant also lost a significant amount of money when the Siber Air investment was unsuccessful. *Id.* at ¶26.

### 3. **The Racehorse investment does not satisfy the second or third prong *Howey***

The "Racehorse" investment fails as an investment contract because there existed no common enterprise nor was Plaintiff unable to control his investment.

To satisfy "common enterprise," Plaintiff argues that there exists vertical commonality because "Plaintiff's anticipated return on investment was inextricably tied up in Defendant PRUSSIN's success in managing and racing the horse." *Motion* at 11. However, Plaintiff ignores the fact that Defendant did not actually "manage and race the horse." *Statement of Controverted Facts* ¶25. Instead, Defendant was in the *exact same position* as Plaintiff; namely, he was an investor, among four or five other people including Plaintiff, who relied on the expertise of others hired by the investors. *Id.* Consequently, Plaintiff's success was no more based on Defendant's success in managing the horse than Defendant's success was based on Plaintiff's management of the horse. This begs the question: can Defendant counterclaim against Mr. Zowine for the same claims Mr. Zowine is seeking redress here? In short, Plaintiff has failed to establish vertical commonality.

As to the third prong – Plaintiff's reliance on others – it is important to note that this investment was, at least, a joint venture or partnership. *Id.* at ¶24. As a partner, it is presumed that Plaintiff has sufficient managerial powers to defeat the claim that it is an investment

contract. *Nutek*, 194 Ariz. at 109. To overcome that presumption, Plaintiff must show that he was, essentially, without any legal and practical control over his investment. *Nutek*, 194 Ariz. at 109. However, as explained above, Plaintiff cannot establish this fact by merely voluntarily disavowing his managerial powers. *See Holden*, 978 F.2d 1115. Just like Defendant, Plaintiff could have, at any moment, exercised his partnership powers to influence the raising, feeding, racing and overall management of the horse. Moreover, the partnership had only a small number of individuals – therefore, Plaintiff's ability to exercise his right was not dwarfed in any way. *Statement of Controverted Facts* ¶24.

Further, Plaintiff was not "dependent upon the expertise and experience of Defendant PRUSSIN." *Motion* at 12. Defendant was no more experienced in horse management than the other owners, including Plaintiff. *Statement of Controverted Facts* ¶25. The mere fact that Plaintiff voluntarily dismissed his responsibility is not sufficient to place the burden on Defendant or anyone else. *See e.g. Holden*, 978 F.2d 1115 (The mere fact that Plaintiff "chose to be passive and did not actively utilize the legal powers afforded them by the partnership agreement" was insufficient under the third *Williamson* factor).

Accordingly, Plaintiff has failed to carry its burden to show, without a genuine issue of material fact, that the three investments were in fact securities.

## D.   **EVEN IF THE THREE INVESTMENTS ARE SECURITIES, PRUSSIN DID NOT VIOLATE ARIZONA SECURITIES LAW WITH RESPECT TO THOSE SECURITIES**

Assuming, *arguendo*, that the three investments discussed above satisfy the other requirements to make them securities, Defendant did not "engage in the unlawful offer and sale of unregistered securities." *Motion* at 12. While the "securities" may well have been

unregistered, Plaintiff's explanation of Arizona Securities law, specifically with relation to A.R.S. § 44-1841(A), is incomplete.

### 1. <u>There is, at minimum, a genuine issue of material fact as to whether Defendant did 'sell or offer to sell" these "securities"</u>

A.R.S. § 44-1841(A), in relevant part, reads that "[i]t is unlawful to *sell or offer for sale* within or from this state any securities unless the securities have been registered...." This section undeniably relies on the definition of the term "sell," which is itself a term of art.

According to A.R.S. § 44-1801(21), "'[s]ale' or 'sell' means a sale or any other disposition of a security or interest in a security *for value*, and includes a contract to make such sale or disposition. A security given or delivered with, or as a bonus on account of, a purchase of securities or other thing shall be conclusively presumed to constitute a part of the subject of the purchase and to have been sold for value."  A.R.S. § 44-1801(21) (emphasis added). Moreover, "the transaction must be characterized at the time when it transpired." *Dagget*, 152 Ariz. at 565 (internal citations omitted).

It is uncontested that Defendant has not *sold* any securities – more specifically, he himself *has not derived any value* from any of the investments made by David Zowine. *Statement of Controverted Facts* ¶19. At best, Defendant only offered an *opportunity* – an opportunity he himself was engaged in and felt confident enough about to invest his own money in – to "family and friends" to engage in the very same investments he was. *See e.g.* Dkt. No. 39-1.

If, however, Plaintiff intended to argue that Defendant "sold" these "securities" by way of his relationship to Law Funder, LLC, subject to A.R.S. § 44-2003(A), Defendant contends that he is still not liable for that "sale." Under Arizona law, "an action brought under § 44-

2001[2]…against any person…who made, participated in or induced the unlawful sale or purchase, and such persons shall be jointly and severally liable….” A.R.S. § 44-2003(A). However, a person does not participate in such a sale “solely by reason of having acted in the ordinary course of that person's professional capacity in connection with that sale or purchase.” *Id.* In making that “sale,” Defendant was acting in his “professional capacity” as a partner for The Law Funder, LLC, by discussing lucrative investments with family and friends that he himself was engaged in. *Statement of Controverted Facts* ¶21. Accordingly, even if the investments were securities, Defendant has not “sold” those securities.

Further, in the event Plaintiff contends that Prussin's letter dated June 11, 2004, Dkt. No. 39-1, evidences the “sale” by providing a “guarantee” on investments, Plaintiff's argument must ultimately fail for at least three reasons. First, Plaintiff has not pleaded, outside of vague conclusory statements, this claim in his complaint. Second, Plaintiff has produced no evidence – other than a self-serving declaration – to suggest that the letter, and thus the “offer,” was addressed to him, and therefore, he lacks standing to bring this claim. Third, the letter would, at best, be a separate promissory note from Prussin to his “family and friends.” Consequently, it is only a contract between two parties – not something that immediately rises to the level of a security. *See e.g. State v. Tober*, 173 Ariz. 211 (1992) (Discussing the constitutional vagueness of “note” and addressing tests that evaluate their determination). Although Arizona defines a security as “any note...,” A.R.S. § 44-1801(23), Defendant contends that a broad reading encompassing *all* promissory notes would destroy the very purpose of a promissory note.

---

[2] A.R.S. § 44-2001 provides a civil remedy for a “sale or contract for sale of any securities to any purchaser in violation of § 44-1841.” A.R.S. § 44-2001.

Moreover, Plaintiff cannot construe the letter as an "investment contract" because it would fail at least the first and second prong of *Howey*. Namely, nothing was given to Prussin in exchange for the promissory note, there was no pooling of money in Prussin, and the success of the investment was not dependent on the success of Prussin. Moreover, even if it is a security, either as a promissory note or as an investment contract, then it falls squarely into the registration exemption commonly referred to as "private placement," as discussed in more detail below. *See* A.R.S. § 44-1844.

## 2. The "securities" are exempt from registration because they are a private placement.

According to Arizona and federal law, § 44-1841 does not apply to any "transactions by an issuer not involving any public offering." A.R.S. § 44-1844; Securities Act of 1933 §4(a)(2). While Plaintiff has not alleged in his Motion who the "issuer" is, Defendant can only assume Zowine intends to claim Defendant is the issuer, otherwise he would have conceded the claim that he has named the wrong party. *See* Verified Complaint ¶ 21 ("Defendant Prussin, his attorneys, are "issuers" of a "security" as those terms are defined by Arizona's 'Blue Sky' statutes"). Consequently, Defendant would fall perfectly into the "private placement" exemption from securities because the "securities" were never offered on the public market. *Statement of Controverted Facts* ¶20; *see also* Dkt. No. 39-1 at 1 ("Dear Family and Friends…"); *see also* Dkt. No. 39-2 at 1 ("The Units are being offered for sale only to persons who qualify as 'accredited investors' as such term is defined in the Securities Act of 1933…and Regulation D promulgated thereunder"). Further, Defendant would also be protected under the "safe harbor" provisions of both Arizona and Federal law. *Id*; *see generally* Reg. D Rule 506; *see generally* A.A.C. R14-4-126(F).

17

Plaintiff has shown nothing in the record that suggests Defendant's "securities" were offered on anything other than a private or "friends and family" level. *See e.g.* Dkt. No. 39-1; *see also Statement of Controverted Facts* ¶20. In fact, the evidence on the record, relied on by the Plaintiff, suggests that they were completely private. *See* Dkt. No. 39-2 at 1 ("No public trading market exits for the Units"). Further, Plaintiff appears to concede that these investments were, in fact, private. *See Plaintiff's Separate Statement of Facts in Support of Motion for Partial Summary Judgment* ¶3 ("Prussin has been actively involved in the promotion and solicitation of *private investment* in the for-profit business of 'pre-settlement finance products….'") (emphasis added).

Accordingly, the "securities," even if they are such, were exempt from registration.  At minimum, a genuine issue of material fact exists as to whether the securities at issue were, in fact, private placements.

### E.      DEFENDANT PRUSSIN IS NOT LAIBLE UNDER PLAINTIFF'S CIVIL RICO CLAIM

Assuming that Plaintiff's Civil Rico claim was not outright barred because Plaintiff is not the Attorney General or County Attorney, Plaintiff's action must still fail. Plaintiff contends that its "civil RICO claim is based on A.R.S. § 13-2314(a), which provides a remedy for one who sustains an injury by 'unlawful acts' as defined by A.R.S. §2301(D)." Motion at 13. Specifically, Plaintiff cites to A.R.S. § 13-2301(D)(4)(s). *Id.* Defendant is unable to locate this section of the statute, and consequently assumes Plaintiff intended to cite to A.R.S. § 13-2301(D)(4)(xix) – "[i]ntentional or reckless sale of unregistered securities or real property securities." A.R.S. § 13-2301(D)(4)(xix).

Even assuming this claim can go forward, the first threshold that Plaintiff must overcome is whether the sale was "intentional or reckless." Defendant never provided any such information. Regardless, Defendant contends that there is a genuine dispute of material fact as to this point because Defendant himself made invested in the very same "securities." *Statement of Controverted Facts* ¶26. Consequently, Defendant has also lost significant portions of his investment. *Id.* Defendant contends that a party would not "intentionally or recklessly" make a sale of securities that it itself was invested in. Consequently, there exists a genuine dispute material fact at least as to this point.

Although Plaintiff failed to address the "intentional or reckless" aspect of the statute, it is irrelevant because Plaintiff has failed to show that Prussin has sold, or even offered to sell, any securities. Assuming, *arguendo*, that the three investments above were securities, for the same reasons enumerated, Defendant has not "sold" any securities and even if he has, the "sales" qualify under the exemption of A.R.S. § 44-1844. At best, Defendant has only *recommended* the sale to "family and friends," as shown by Plaintiffs own evidence. *See* Dkt. No. 39-1. Plaintiff's other procedural and pleading infirmities are addressed in Defendant's Motion for Summary Judgment filed on the same date as Plaintiff's Motion.

## F.   PLAINTIFF IS SUING THE WRONG PARTY

For the reasons enumerated above, Plaintiff has failed to show that Defendant, himself, has made any "sale" of "securities." In suing Prussin in his individual capacity, as opposed to the limited liability company in which he was operating within the scope of his authority, Plaintiff has ignored clear and unequivocal law limiting Prussin's personal liability. The concept of a corporation as a separate legal entity is a legal fact, not fiction. *Deutsche Credit*

*Corporation vs. Case Power and Equipment Company*, 179 Ariz. 155 (Ariz. App. 1994). Arizona courts recognize corporate entities, such as Law Funder, as a separate legal entity whose acts are not imputed to officers, shareholders or affiliates. *Gatecriss v. Great Republic Lfie Insurance Co.*, 170 Ariz. 34, 38 (1991). Further, Arizona courts will generally treat a corporation as a separate legal entity unless the Plaintiff carries the burden of demonstrating sufficient reason to disregard the corporate form. *Dietel v. Day*, 16 Ariz. App. 206 (1972). Plaintiff has acknowledged that his investments – at least the LLC investments – was made to Law Funder, LLC. Plaintiff has presented no such reason why Defendant should be personally liable for any harm resulting therefrom.

If, however, Plaintiff intended to argue that Defendant "sold" these "securities" by way of his relationship to Law Funder, LLC, subject to A.R.S. § 44-2003(A), Defendant contends that he is still not liable for that "sale." Under Arizona law, "an action brought under § 44-2001[3]…against any person…who made, participated in or induced the unlawful sale or purchase, and such persons shall be jointly and severally liable…." A.R.S. § 44-2003(A). However, a person does not participate in such a sale "solely by reason of having acted in the ordinary course of that person's professional capacity in connection with that sale or purchase." *Id.* In making that "sale," Defendant was acting in his "professional capacity" as a partner of Law Funder, by discussing lucrative investments with family and friends that he himself was engaged in. *Statement of Controverted Facts* ¶21.

The mere fact that Plaintiff continues to pursue Mr. Prussin individually establishes that this litigation in not only frivolous but is another act in a long line of retaliatory actions Mr.

---

[3] A.R.S. § 44-2001 provides a civil remedy for a "sale or contract for sale of any securities to any purchaser in violation of § 44-1841." A.R.S. § 44-2001.

Zowine has directed towards Mr. Wichansky, his family and his friends.  *See Wichansky v. Zowine, et al.*, Docket No.: 13-cv-1208 (Judge David Campbell).

**V.**  **CONCLUSION**

For the foregoing reasons, Plaintiff's Amended Motion for Partial Summary Judgment must be denied.

RESPECTFULLY SUBMITTED this 31st day of July, 2015.

**CALLAGY LAW, P.C.**

By:  *s/ Michael J. Smikun*
  Michael J. Smikun (admitted *pro hac vice*)
  650 From Road, Suite 565
  Paramus, New Jersey 07652
  Telephone: (201) 261-1700
  Telecopier: (201) 549-8408
  E-mail:msmikun@callagylaw.com
  *Attorneys for Defendant George Prussin*

ORIGINAL of the foregoing
filed this 31st  day of July, 2015
through ECF with the Clerk
of the United States District
Court for the District of Arizona

COPY of the foregoing
mailed this 31st  day of July, 2015 to:

  Jeffrey M. Proper, Esq.
  10645 N Tatum Blvd
  Suite 200-652
  Phoenix, AZ 85028
  Attorney for Plaintiff

By:  *s/Michael J. Smikun*

**CALLAGY LAW, P.C.**
Alethia Scipione 026102
668 N 44ᵗʰ Street, Suite 300
Phoenix, AZ 85008
Sean R. Callagy, Esq. (admitted *pro hac vice*)
Michael J. Smikun, Esq. (admitted *pro hac vice*)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, NJ 07652
Phone: (201) 261-1700
Fax:    (201) 549-6311
ascipione@callagylaw.com
msmikun@callagylaw.com
scallagy@callagylaw.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **DAVID ZOWINE,** | Civil Action No.: |
| **Plaintiff,** | 2:14-cv-00892-GMS |
| **v.** | |
| **GEORGE PRUSSIN and JANE DOE PRUSSIN,** his wife.; and JOHN and JANE DOES I-X, ABC CORPORATIONS I-X; AB PARTNERSHIPS I-X; and ABC LIMITED LIABILITY COMPANIES I-X; | **DEFENDANT'S CONTROVERTING STATEMENT OF FACTS IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **Defendants.** | |

Defendants George Prussin and Jane Doe Prussin (Collectively, "Defendant Prussin" or "Prussin") hereby submit their *Controverting Statement of Facts* ("CSOF") in response to Plaintiff David Zowine ("Plaintiff" or "Zowine") *Amended Motion for Summary Judgment.*

1

I.    **CONTROVERTED MATERIAL FACTS**

1.    Defendant does not dispute this statement of fact.

2.    Defendant does not dispute this statement of fact.

3.    Defendant disputes this statement of fact to the extent it suggests that Defendant had "promot[ed] and solicit[ed]" investments. *Declaration of George Prussin* ¶12 (Defendant's responsibility was to "discuss investment opportunities" with his "personal network of family and friends").

4.    Defendant disputes this statement of fact to the extent it suggests that Defendant had "promot[ed] and solicit[ed]" investments. *Declaration of George Prussin* ¶12 (Defendant's responsibility was to "discuss investment opportunities" with his "personal network of family and friends"). Defendant further disputes this statement of fact to the extent it suggests a "common scheme or plan" as it only cites to one document, far short of showing a "common scheme or plan." Defendant further disputes the remainder of the statement of fact on the ground that it is unsubstantiated by evidence in the record.

5.    Defendant disputes this statement of fact to the extent it suggests that Defendant had "promot[ed] and solicit[ed]" investments. *Declaration of George Prussin* ¶12 (Defendant's responsibility was to "discuss investment opportunities" with his "personal network of family and friends"). Defendant further disputes this statement of fact to the extent it does not specify what the "very high rate of return on investments" is. Additionally, Plaintiff points to no evidence other than a self serving declaration for its support. Defendant further disputes this statement

to the extent that it suggests that Prussin or anyone else guaranteed or otherwise ensured investors of this "very high rate of return." *See* Dkt. No. 39-4 ("Lion's actual results will vary from the projections and the variation could be substantial").

6. Defendant disputes this statement of fact to the extent it states that Defendant "participate[d] either directly or indirectly in the management and control of Safari Investments LLC and The Law Funder LLC." *Declaration of George Prussin* ¶¶12, 19, 20; Dkt. No. 40-4 Ex. 4 ("This comes from the law funder, and I have No *[sic]* control").

7. Defendant disputes this statement of fact to the extent that it suggests that Defendant has raised investments via promotions or solicitations. *Declaration of George Prussin* ¶12 (Defendant's responsibility was to "discuss investment opportunities" with his "personal network of family and friends"). Defendant further disputes this statement of fact with respect to the "80 million dollars in investments". *Declaration of George Prussin* ¶13.

8. Defendant disputes this statement of fact that it suggests that Defendant met with Plaintiff in Phoenix, Arizona in or around May 2005. *Declaration of George Prussin* ¶¶6, 8, 9; *see also Correspondence dated May 11, 2005* (Addressed only to Mr. Chris Preisel); *Declaration of George Prussin in Support of Defendants Motion for Summary Judgment* ¶ 14. Defendant disputes this statement of fact to the extent it suggests that Defendant had "promot[ed] and solicit[ed]" investments. *Declaration of George Prussin* ¶12 (Defendant's responsibility was

3

to "discuss investment opportunities" with his "personal network of family and friends").

9.   Defendant disputes this statement of fact to the extent it suggests that Defendant had "promot[ed] and solicit[ed]" investments. *Declaration of George Prussin* ¶12 (Defendant's responsibility was to "discuss investment opportunities" with his "personal network of family and friends"). Defendant further disputes this statement of fact to the extent it suggests that Plaintiff invested because of Defendant's promotion of the investment to Plaintiff. *Declaration of George Prussin* ¶¶8, 17; *Declaration of George Prussin in Support of Defendants Motion for Summary Judgment* ¶ 14. Defendant further disputes this statement of fact to the extent that the claim of $100,000.00 investments is unsubstantiated by the evidence cited by the Plaintiff other than by way of a self serving declaration.

10.   Defendant disputes this statement of fact to the extent it suggests that Defendant had "promot[ed] and solicit[ed]" investments. *Declaration of George Prussin* ¶12 (Defendant's responsibility was to "discuss investment opportunities" with his "personal network of family and friends"); Dkt. No. 40-2, Ex. 7 (Email from Marc Wichansky stating that he "told George [they] were each going to wire him $100k which he will put $50k in each of the 2 cases"). Defendant further disputes this statement of fact to the extent it does not specify, nor point to any evidence, as to what the "promised high return rates" are. Defendant further disputes this statement of fact to the extent it states that Defendant managed the "Special Deals" directly. *Declaration of George Prussin* ¶20. Defendant further disputes

4

this statement of fact to the extent it states that the "funding opportunities…did not meet approval and underwriting approval by The Law Funder LLC." *Declaration of George Prussin* ¶21.

11. Defendant disputes this statement of fact to the extent it suggests that Defendant had "promot[ed]" investments. *Declaration of George Prussin* ¶12 (Defendant's responsibility was to "discuss investment opportunities" with his "personal network of family and friends"); Dkt. No. 40-2, Ex. 7 (Email from Marc Wichansky stating that he "told George [they] were each going to wire him $100k which he will put $50k in each of the 2 cases").

12. Defendant disputes this statement of fact to the extent it suggests that it was Defendant who "solicited Plaintiff regarding joining him in making a pooled investment in a certain race horse." *Declaration of George Prussin* ¶12; *see also* Dkt. No. 40-5, Ex. 9 (Email from Marc Wichansky to Plaintiff asking him to write a check to George for the horse portfolio). Defendant also disputes this statement of fact to the extent it suggests that Plaintiff's investment was only for one horse. *Declaration of George Prussin* ¶23. Defendant herein submits further information in its additional facts below.

13. Defendant disputes this statement of fact to the extent it suggests that Defendant actually managed the Racehorse investment. *Declaration of George Prussin* ¶¶ 27, 28. Defendant further disputes this fact to the extent it suggests that Plaintiff had no "participation in managing the boarding, upkeep, training and racing of the horse." *Declaration of George Prussin* ¶26; Dkt. No. 40-5, Ex. 9 (Detailing

the costs for upkeep and insurance of the cost). Defendant herein submits further information in its additional facts below.

14. Defendant disputes this statement of fact. *Declaration of George Prussin* ¶18. Defendant further disputes this statement of fact to the extent it suggests that Defendant should have provided Plaintiff with a "prospectus, private placement memorandum, or other disclosure documents." *Declaration of George Prussin* ¶¶18, 19. Defendant herein submits further information regarding the operation of The Law Funder LLC in its additional facts below.

15. Defendant disputes this statement of fact to the extent it presumes the investments were securities and to the extent it presumed that Defendant offered or sold those investments within the meaning of Arizona law. Defendant further disputes this statement of fact on the ground that it is unsupported by any evidence.

## II. ADDITIONAL MATERIAL FACTS

16. Plaintiff has been a business partner for many years with Marc Wichansky, the son-in-law of Defendant, in MGA Healthcare, a multi-million dollar company. Plaintiff is a very experienced business person who is believed to be the predominant reason as to the success of MGA Healthcare. *Declaration of David Zowine*, Dkt. No. 41-3 ¶3; *Exhibit A*.

17. Law Funder LLC had specific procedure that needed to be followed before any investments could be made. The investor would first be provided with documents detailing the investment; after reviewing those documents, the investor had to fill out a subscription to invest in a particular series; Law Funder LLC would then

evaluate the investor's subscription; and if approved, permit the investor to invest money. After being processed, the investor would then get quarterly payments based on his investments and K-1 forms annually. *Declaration of George Prussin* ¶18.

18. Defendant was not involved in the procedural steps that resulted in an investor investing money with Law Funder, LLC. *Declaration of George Prussin* ¶19.

19. Defendant did not receive any remuneration, bonuses or additional payments for generating Plaintiff's investments into the Law Funder investment, "Special Deals" investments, and racehorse investments. *Declaration of George Prussin* ¶¶10, 11.

20. All three investments were never made available for the public to invest into. All transactions were done privately. *Declaration of George Prussin* ¶¶15, 16; Dkt. No. 39-2.

21. Defendant, acting on behalf of The Law Funder LLC, did not solicit or promote the business but instead met and discussed investment opportunities that he was involved in through The Law Funder, LLC with his close family and friends. *Declaration of George Prussin* ¶12. Mr. Prussin has no recollection of having such a meeting with Mr. Zowine before he invested money with the Law Funder. *Declaration of George Prussin* ¶8.

22. Although Defendant was involved in the "Special Deals," he was not in control of the investment or investment funds. Instead, Defendant acted as a conduit between the investor and The Law Funder, LLC. The funds and then the

investments were thereafter managed by The Law Funder, LLC. Additionally, Defendant had no control over which litigation the Law Funder investments would be allocated to. For the Special Deals, the investor was one who decided whether to invest in a specific litigation. *Declaration of George Prussin* ¶¶20, 21.

23. Although Defendant did offer a twelve (12) percent guarantee to certain individuals on their investment into the "Special Deals," <u>Plaintiff was never offered that guarantee nor did he accept that guarantee</u>. *Declaration of George Prussin* ¶11.

24. Plaintiff, Defendant and two other individuals entered into a partnership to purchase a portion of an interest in two race horses to race and potentially breed; the horses were later named Dukes Dream and Colonial Flag. *Exhibit B[1]*; *Dkt. No. 40-5*, Ex. 7; *Declaration of George Prussin* ¶¶23, 24.

25. Defendant was no more experienced in race horse investments and the racing, breeding, and management of race horses than the other partners. Consequently, Defendant was not directly involved in the management and care of Duke's Dream or the other horse they purchased. Defendant and the other partners hired experts to care and manage the horses. *Declaration of George Prussin* ¶¶27, 28.

26. Defendant made significant investments into the very same opportunities as Plaintiff did. Consequently, Defendant lost his investment in the "Siber Air" case. *Declaration of George Prussin* ¶¶29.

---

[1] On information and belief, it is known that Plaintiff had access to and did read Mr. Wichansky's e-mails. Accordingly, Defendant was aware that the horse portfolio was a partnership. Evidence detailing the same, however, cannot be produced because testimony to that affect is subject to protective orders in one or more separate law suits involving David Zowine. *See e.g. Declaration of George Prussin* ¶7.

27.    Of the "Special Deals," Defendant earned $64,262.50 on top of his investment in the SPS case and $35,915.00 on top of his investment into the Rubin case. *Declaration of George Prussin ¶30; Exhibit C; Exhibit D.*

RESPECTFULLY SUBMITTED this 31st day of July, 2015.

**CALLAGY LAW, P.C.**

By:  *s/ Michael J. Smikun*
        Michael J. Smikun (admitted *pro hac vice*)
        650 From Road, Suite 565
        Paramus, New Jersey 07652
        Telephone: (201) 261-1700
        Telecopier: (201) 549-8408
        E-mail:msmikun@callagylaw.com
        *Attorneys for Defendant George Prussin*

ORIGINAL of the foregoing
filed this 31st day of July, 2015
through ECF with the Clerk
of the United States District
Court for the District of Arizona

COPY of the foregoing
mailed this 31st day of July, 2015 to:

        Jeffrey M. Proper, Esq.
        10645 N Tatum Blvd
        Suite 200-652
        Phoenix, AZ 85028
        Attorney for Plaintiff

By:    *s/Michael J. Smikun*

9

# EXHIBIT A

### AFFIDAVIT OF MARTHA LEON

I, Martha Leon, declare as follows:

1. I am over the age of 18, have personal knowledge of the facts stated in this declaration and, if called to do so, could and would competently testify thereto. I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct to the best of my knowledge.

2. I currently work as a Medical Biller at MGA Health Care, which collectively with its parent, affiliates and subsidiaries, is referred to as the "Company". I have worked at the Company for 3 years. At the Company, I am responsible for the billing in the home health care division. In connection with my responsibilities, I work closely with the co-owner of the Company, David Zowine ("Zowine"). The other co-owner of the Company is Marc Wichansky ("Wichansky," and collectively with Zowine, the "Co-owners").

3. In my responsibilities to the Company, I report directly to Charles Johnson and indirectly for Zowine. Zowine is responsible for the management of all sales staff and for the conduct of sales operations of the Company and in that context is in the office every day without fail.

4. Since I have worked at the Company, the Company has grown, and Zowine has been directly responsible for this sales growth. Zowine is in the office all of the time and I feel like I can speak to Zowine about any question that arises with my responsibilities. I believe that Wichansky is responsible for the administrative operations of the Company, and he is not in the office as frequently as Zowine, nor is he as involved in the management of the sales operations of the Company.

5. Mr. Zowine focuses on continually increasing the sales of the Company and on growing the clients and the Company's client and contact base. Zowine's experience and sales expertise are valuable assets of the Company, and there is no adequate replacement for his management skills. Zowine makes the office like a family and his presence in the office is good for morale. If Zowine no longer performed his responsibilities on behalf of the Company, the value of the Company would be materially diminished. In my experience, Zowine has always used his best efforts to enhance the value of the Company. Zowine is able to put aside any professionally any problem that he may have with Wichansky.



EXHIBIT NO. P70
M. Leon
12/12/11
C. Taylor C 50111

6.  When Wichansky has been absent, Zowine has continued to manage the active operations of the Company and has provided consistency in the management of the Company.  Over this time period, Zowine has been no different in his work ethic, actions or demeanor in the office. Zowine is one of the most honorable men I have met

_Martha Leon_
Martha Leon
January 25, 2011

SUBSCRIBED AND SWORN TO before me this 26ᵗʰ day of January, 2011, by above-named Affiant.

_Marsha M. Powers_
Notary Public

My Commission Expires:

OFFICIAL SEAL
MARSHA M. POWERS
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 30, 2013

# EXHIBIT B

## Hanna Herbasz

| | |
|---|---|
| From: | EGPRUSSIN@aol.com |
| Sent: | Thursday, October 14, 2010 9:10 AM |
| To: | Brad.Grossman@bngprodx.com; HHERBASZ@ATT.NET |
| Cc: | marcw@mgasearch.comhh; ejschechter@berkowschechter.com |
| Subject: | Re: (no subject) |

Good Morning Brad;
  I just spoke with my accountant Eddie Schecter who explained the following;
  This is a joint venture between 4 partners,[our share],You,me Zowine,and GENIUS!
My accountant and my controller Hanna will do the accounting,ie.expenses,depreciation,later breeding and send this to
ALL  4 partners,split equally for taxes.This will be reported on schedule "C" of our tax return.
 We could have set up an LLC.,but then MARC would have thought that we are going to keep buying race horses,which I
do NOT plan on doing.Let's see how this works out,before we go into the racing business.
   Please do not be afraid to call me if you have ANY questions. I hope this answers you    Thanks Again

# EXHIBIT C

George J. Prussin

January 21, 2009

Mr. David Zowine
MGA Employee Services
2800 N. 44Th Street # 600
Phoenix, AZ 85008

Re: George Prussin - Special Deals

Dear David,

    We are enclosing your 2008 1099-Misc Income Form showing Other Income of
$64,262.50.  We suggest that the amount be reported on page 1, line 21 of the Form 1040,
but please consult your tax advisor. The following is the transaction detail:

| Special Deal | Original Investment | GJP Pmt | Investment Outstanding | Other Income Box #3 |
|---|---|---|---|---|
| SPS | 50,000 | 110,750 | 0 | 60,750.00 |
| SPS (Ref: Final Analysis) | N/A | 3,513 | 0 | 3,512.50 |
| Total | 50,000 | 114,263 | 0 | 64,262.50 |

If you have any questions please feel free to call me at (201) 385-3700 or Ed Schechter, CPA
at (203) 356-1061.

Sincerely,

Hanna Herbasz

George J. Prussin
1 Hastings Drive
Tenafly, NJ 07670
Tel: (201) 568-0363  Fax (201) 568-7304                        GP0018

| ☐ VOID | ☐ CORRECTED | | | |
|---|---|---|---|---|

**PAYER'S name, street address, city, state, ZIP code, and telephone no.**

George J Prussin
1 Hastings Drive
Tenafly, NJ 07670

(201) 568-0363

| 1 Rents | OMB No. 1545-0115 | |
|---|---|---|
| $ | **2008** | **Miscellaneous Income** |
| 2 Royalties | | |
| $ | Form **1099-MISC** | |
| 3 Other income | 4 Federal income tax withheld | **Copy C** |
| 64262.50 | | |
| | | **For Payer** |

| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds | 6 Medical and health care payments |
|---|---|---|---|
| ███████ | ███████ | | |

RECIPIENT'S name

David Zowine
6752 E. Arroyo Ct.
Paradise Valley, AZ 85253

| 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | **For Privacy Act and Paperwork Reduction Act Notice, see the 2008 General Instructions for Forms 1099, 1098, 5498, and W-2G.** |
|---|---|---|
| $ | $ | |
| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ☐ | 10 Crop insurance proceeds | |
| | $ | |
| 11 | 12 | |

| Account number (see instructions) | 2nd TIN not. ☐ | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney |
|---|---|---|---|

| 15a Section 409A deferrals | 15b Section 409A income | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
|---|---|---|---|---|
| $ | $ | $ | | $ |
| | | $ | | $ |

Form **1099-MISC**                                                Department of the Treasury - Internal Revenue Service

GP0019

# EXHIBIT D

George J. Prussin

January 13, 2010

Mr. David Zowine
MGA Employee Services
2800 N. 44Th Street # 600
Phoenix, AZ 85008

Re: George Prussin - Special Deals

Dear David,

       We are enclosing your 2009 1099-Misc Income Form showing Other Income of
$35,915.  We suggest that the amount be reported on page 1, line 21 of the Form 1040, but
please consult your tax advisor. The following is the transaction detail:

| Special Deal | Original Investment | GJP Pmt | Investment Outstanding | Other Income Box #3 |
|---|---|---|---|---|
| Rubin Case | 50,000 | 85,915 | 0 | 35,915.00 |
|  |  |  | 0 |  |
| **Total** | **50,000** | **85,915** | **0** | **35,915.00** |

If you have any questions please feel free to call me at (201) 385-3700 or Ed Schechter, CPA
at (203) 356-1061.

Sincerely,

Hanna Herbasz

George J. Prussin
1 Hastings Drive
Tenafly, NJ 07670
Tel: (201) 568-0363  Fax (201) 568-7304

GP0020

☐ **CORRECTED (if checked)**

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | | |
|---|---|---|---|

PAYER'S name, street address, city, state, ZIP code, and telephone no.

George J Prussin
1 Hastings Drive
Tenafly, NJ 07670

(201) 568-0363

| | |
|---|---|
| **1 Rents** $ | **OMB No. 1545-0115** |
| | **2009** |
| **2 Royalties** $ | **Form 1099-MISC** |
| **3 Other income** 35915.00 | **4 Federal income tax withheld** $ |

**Miscellaneous Income**

**Copy B
For Recipient**

| PAYER'S federal identification number | RECIPIENT'S identification number |
|---|---|

| **5 Fishing boat proceeds** $ | **6 Medical and health care payments** $ |
|---|---|

RECIPIENT'S name, address, city and ZIP code

David Zowine
6752 E. Arroyo Ct.
Paradise Valley, AZ 85253

| **7 Nonemployee compensation** $ | **8 Substitute payments in lieu of dividends or interest** $ |
|---|---|
| **9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ►** ☐ | **10 Crop insurance proceeds** $ |
| **11** | **12** |

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Account number (see instructions)

| **13 Excess golden parachute payments** $ | **14 Gross proceeds paid to an attorney** $ |
|---|---|

| **15a Section 409A deferrals** $ | **15b Section 409A income** $ | **16 State tax withheld** $ | **17 State/Payer's state no.** | **18 State income** $ |
|---|---|---|---|---|

Form **1099-MISC**                    (keep for your records)                    Department of the Treasury - Internal Revenue Service

---

☐ **CORRECTED (if checked)**

PAYER'S name, street address, city, state, ZIP code, and telephone no.

| | |
|---|---|
| **1 Rents** $ | **OMB No. 1545-0115** |
| | **2009** |
| **2 Royalties** $ | **Form 1099-MISC** |
| **3 Other income** $ | **4 Federal income tax withheld** $ |

**Miscellaneous Income**

**Copy B
For Recipient**

| PAYER'S federal identification number | RECIPIENT'S identification number |
|---|---|

| **5 Fishing boat proceeds** $ | **6 Medical and health care payments** $ |
|---|---|

RECIPIENT'S name, address, city and ZIP code

| **7 Nonemployee compensation** $ | **8 Substitute payments in lieu of dividends or interest** $ |
|---|---|
| **9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ►** ☐ | **10 Crop insurance proceeds** $ |
| **11** | **12** |

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Account number (see instructions)

| **13 Excess golden parachute payments** $ | **14 Gross proceeds paid to an attorney** $ |
|---|---|

| **15a Section 409A deferrals** $ | **15b Section 409A income** $ | **16 State tax withheld** $ | **17 State/Payer's state no.** | **18 State income** $ |
|---|---|---|---|---|

Form **1099-MISC**                    (keep for your records)                    Department of the Treasury - Internal Revenue Service

DETACH BEFORE MAILING

GP0021

5111

# EXHIBIT E

55

651107

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Deductions,
Credits, etc.**

▶ See separate instructions.

**2007**

For calendar year 2007, or tax
year beginning _____
ending _____

☐ Final K-1     ☐ Amended K-1     OMB No. 1545-0099

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | |
|---|---|---|
| 1 Ordinary business income (loss) 0. | 15 Credits | |
| 2 Net rental real estate income (loss) | | |
| 3 Other net rental income (loss) | 16 Foreign transactions | |
| 4 Guaranteed payments | | |
| 5 Interest income 315. | | |
| 6a Ordinary dividends | | |
| 6b Qualified dividends | 17 Alternative min tax (AMT) items | |
| 7 Royalties | | |
| 8 Net short-term capital gain (loss) 3,309. | 18 Tax-exempt income and nondeductible expenses | |
| 9a Net long-term capital gain (loss) | | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions A 25,572. | |
| 9c Unrecaptured sec 1250 gain | 20 Other information A 315. B 128. | |
| 10 Net section 1231 gain (loss) | | |
| 11 Other income (loss) | | |
| 12 Section 179 deduction | | |
| 13 Other deductions J* 128. | | |
| 14 Self-employment earnings (loss) A 0. | | |

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number
20-5982750

**B** Partnership's name, address, city, state, and ZIP code
LEOPARD TRADING, LLC
3000 MARCUS AVE, SUITE 1W5
LAKE SUCCESS, NY  11042

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's identifying number
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

**F** Partner's name, address, city, state, and ZIP code
DAVID T ZOWINE
6752 E ARROYO CT.
PARADISE VALLEY, AZ 85253

**G** ☐ General partner or LLC
member-manager
☒ Limited partner or other LLC member

**H** ☒ Domestic partner     ☐ Foreign partner

**I** What type of entity is this partner?  INDIVIDUAL

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | VARIOUS% | VARIOUS% |
| Loss | VARIOUS% | VARIOUS% |
| Capital | VARIOUS% | VARIOUS% |

**K** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ |
| Recourse | $ 0. |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ |
| Capital contributed during the year | $ 100,000. |
| Current year increase (decrease) | $ 3,496. |
| Withdrawals & distributions | $( 25,572.) |
| Ending capital account | $ 77,924. |

☒ Tax basis     ☐ GAAP     ☐ Section 704(b) book
☐ Other (explain)

*See attached statement for additional information.

For IRS Use Only

JWA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule K-1 (Form 1065) 2007

711261
12-31-07

LEOPARD TRADING, LLC                                     20-5982750

SCHEDULE K-1                    PORTFOLIO DEDUCTIONS
                  SUBJECT TO THE 2% FLOOR BOX 13, CODE J

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| PROFESSIONAL FEES & MISC | | 128. |
| TOTAL TO SCHEDULE K-1, BOX 13, CODE J | | 128. |

2007

New York State Department of Taxation and Finance
# New York Partner's Schedule K-1
Tax Law - Article 22 (Personal Income Tax)

**IT-204-IP**

55

Final K-1
Amended K-1

For calendar year 2007 or tax year beginning  **01-01-2007**  and ending  **12-31-2007**

Partners: Before completing your income tax return, see Form IT-204-IP-I, *Partner's Instructions for Form IT-204-IP* (available at www.nystax.gov).

## Partnership's information *(see instructions)*

Partnership's name (as shown on Form IT-204)
**LEOPARD TRADING, LLC**

Partnership's EIN
**20-5982750**

A   Mark an X in the box if either applies to your entity      Publicly traded partnership      Investment partnership

B   Tax shelter registration number, if any ..................................................................   **B**

C   Business allocation percentage ..................................................................   **C**   **100.0000**

## Partner's information *(see instructions)*

Partner's name
**DAVID T ZOWINE**

Partner's identifying number
**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**

Partner's address
**6752 E ARROYO CT.**

| City | State | ZIP code |
|---|---|---|
| **PARADISE VALLEY** | **AZ** | **85253** |

D   The partner is a *(mark an X in the appropriate box)*      General partner or LLC member-manager   **X**   Limited partner or other LLC member

E   What is the tax filing status of the partner? *(mark an X in the appropriate box, if known)*   **X**   Individual      Estate/trust      Partnership

F   If the partner is a disregarded entity or grantor trust,
    enter the tax ID of the entity or individual reporting the income, if known ..................................................................   **F**

G   Did the partner sell its entire interest during the tax year? ..................................................................   **G**   Yes      No   **X**

H   Partner's share of profit, loss, and capital

| | | | Beginning | | Ending | |
|---|---|---|---|---|---|---|
| 1) | Profit | H1 | VARIOUS | % | VARIOUS | % |
| 2) | Loss | H2 | VARIOUS | % | VARIOUS | % |
| 3) | Capital | H3 | VARIOUS | % | VARIOUS | % |

I   Partner's share of liabilities at the end of the year

| | | |
|---|---|---|
| 1) | Nonrecourse | I1 |
| 2) | Qualified nonrecourse financing | I2 |
| 3) | Recourse | I3 |

J   Partner's capital account analysis

| | | | |
|---|---|---|---|
| 1) | Beginning capital account | J1 | |
| 2) | Capital contributed during the year - cash | J2 | 100,000. |
| 3) | Capital contributed during the year - property | J3 | |
| 4) | Current year increase (decrease) | J4 | 3,496. |
| 5) | Withdrawals and distributions - cash | J5 | 25,572. |
| 6) | Withdrawals and distributions - property | J6 | |
| 7) | Ending capital account | J7 | 77,924. |
| 8) | Method of accounting *(mark an X in the appropriate box)* | | |

   **X**   Tax basis      GAAP      Book      Other *(attach explanation)*

K   Resident status *(mark an X in all boxes that apply)*

| | | |
|---|---|---|
| NYS full-year resident | Yonkers full-year resident | NYC full-year resident |
| NYS part-year resident | Yonkers part-year resident | NYC part-year resident |
| **X**   NYS nonresident | Yonkers nonresident | |

1181071019

Please file this original scannable form with the Tax Department.



Page 2 of 4    IT-204-IP (2007)

L  If the partner was included in a group return, enter the special NYS identification number, if known  ............  **L**

M  Was Form IT-2658-E filed with the partnership? ........................................................  **M**  Yes       No  **X**

N  NYS estimated tax paid on behalf of partner *(from Form IT-2658)*          Date                    Amount
    1)  First installment  ...................................................  N1
    2)  Second installment  ...............................................  N2
    3)  Third installment  ..................................................  N3
    4)  Fourth installment  ................................................  N4
    Total NYS estimated tax paid on behalf of partner *(add lines N1 through N4)*  ..........  **N**

## Partner's share of income, deductions, etc.

| A - Partner's distributive share items | | B - Federal K-1 amount | | C - New York State amount |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 1. | 1. | |
| 2 | Net rental real estate income (loss) | 2. | 2. | |
| 3 | Other net rental income (loss) | 3. | 3. | |
| 4 | Guaranteed payments | 4. | 4. | |
| 5 | Interest income | 5. | 315. | 5. | 315. |
| 6 | Ordinary dividends | 6. | 6. | |
| 7 | Royalties | 7. | 7. | |
| 8 | Net short-term capital gain (loss) | 8. | 3,309. | 8. | 3,309. |
| 9 | Net long-term capital gain (loss) | 9. | 9. | |
| 10 | Net section 1231 gain (loss) | 10. | 10. | |
| 11 | Other income (loss) | 11. | 11. | |
| | Identify: | | | |
| 12 | Section 179 deduction | 12. | 12. | |
| 13 | Other deductions | 13. | 128. | 13. | 128. |
| | Identify: | | | |
| 14 | Tax preference items for minimum tax | 14. | 14. | |
| | Identify: | | | |
| 15 | Net earnings (loss) from self-employment | 15. | 15. | |
| 16 | Tax-exempt income and nondeductible expenses | 16. | 16. | |
| 17 | Distributions - cash and marketable securities | 17. | 25,572. | 17. | 25,572. |
| 18 | Distributions - other property | 18. | 18. | |
| 19 | Other items not included above that are required to be | | | |
| | reported separately to partners | 19. | 443. | 19. | 443. |
| | Identify:    STATEMENT | | | |

## Partner's share of New York modifications *(see instructions)*

20  New York State additions

| | Number | A - Total amount | B - New York State allocated amount |
|---|---|---|---|
| 20a. | E A | | |
| 20b. | E A | | |
| 20c. | E A | | |
| 20d. | E A | | |
| 20e | E A | | |
| 20f. | E A | | |

21  Total addition modifications *(total column A, lines 20a through 20f)*  ...........................  21.

788852
01-02-08    Please file this original scannable form with the Tax Department.

1182071019



IT-204-IP (2007)     Page 3 of 4

## Partner's share of New York modifications *(continued)*

22  New York State subtractions

| | Number | A - Total amount | B - New York State allocated amount |
|---|---|---|---|
| 22a. | E S | | |
| 22b. | E S | | |
| 22c. | E S | | |
| 22d. | E S | | |
| 22e | E S | | |
| 22f. | E S | | |

23  Total subtraction modifications *(total of column A, lines 22a through 22f)* ................................... 23.

24  Additions to federal itemized deductions

| | Letter | Amount |
|---|---|---|
| 24a. | | |
| 24b. | | |
| 24c. | | |
| 24d. | | |
| 24e | | |
| 24f. | | |

25  Total additions to federal itemized deductions *(add lines 24a through 24f)* ................................ 25.

26  Subtraction from federal itemized deductions

| | Letter | Amount |
|---|---|---|
| 26a. | | |
| 26b. | | |
| 26c. | | |
| 26d. | | |
| 26e | | |
| 26f. | | |

27  Total subtractions from federal itemized deductions *(add lines 26a through 26f)* ..................... 27.

28  Interest expense incurred to carry tax-exempt obligations ................................................. 28.

29  New York adjustments to tax preference items ................................................................. 29.

## Partner's credit information

## Part 1 - Pass-through credit bases and factors

Brownfield redevelopment tax credit *(Form IT-611)*

30  Site preparation credit component .................................................................................. 30.

31  Tangible property credit component ............................................................................... 31.

32  On-site groundwater remediation credit component ....................................................... 32.

1183071019

## Partner's credit information *(continued)*

**EZ capital tax credit** *(Form IT-602)*

| | | |
|---|---|---|
| 33 | Investments in certified EZ businesses | 33. |
| 34 | Contributions of money to EZ community development projects | 34. |
| 35 | Recapture of credit for investments in certified EZ businesses | 35. |
| 36 | Recapture of credit for contributions of money to EZ community development projects | 36. |

**QEZE tax reduction credit** *(Form IT-604)*

| | | |
|---|---|---|
| 37 | QEZE employment increase factor | 37. |
| 38 | QEZE zone allocation factor | 38. |
| 39 | QEZE benefit period factor | 39. |

**QETC facilities, operations, and training credit** *(Form DTF-619)*

| | | |
|---|---|---|
| 40 | Research and development property credit component | 40. |
| 41 | Qualified research expenses credit component | 41. |
| 42 | Qualified high-technology training expenditures credit component | 42. |

**Farmers' school tax credit** *(Form IT-217)*

| | | |
|---|---|---|
| 43 | Acres of qualified agricultural property | 43. |
| 44 | Acres of qualified conservation property | 44. |
| 45 | Eligible school district property taxes paid | 45. |
| 46 | Acres of qualified agricultural property converted to nonqualified use | 46. |

**Other pass-through credit bases and factors**

Credit bases

| Code | Amount | | Code | Amount |
|---|---|---|---|---|
| 47a. | | 47d. | | |
| 47b. | | 47e. | | |
| 47c. | | 47f. | | |

Credit factors

| Code | Factor | | Code | Factor | | Code | Factor |
|---|---|---|---|---|---|---|---|
| 47g. | | 47i. | | | 47k. | | |
| 47h. | | 47j. | | | 47l. | | |

## Part 2 - Pass-through credits, addbacks and recaptures

| | | |
|---|---|---|
| 48 | Long-term care insurance credit *(Form IT-249)* | 48. |
| 49 | Investment credit *(including employment incentive credit and historic barn rehabilitation credit; Form IT-212)* | 49. |
| 50 | Research and development - investment credit *(Form IT-212)* | 50. |

51  Other pass-through credits

| Code | Amount | | Code | Amount |
|---|---|---|---|---|
| 51a. | | 51c. | | |
| 51b. | | 51f. | | |
| 51c. | | 51g. | | |
| 51d. | | 51h. | | |

52  Addbacks of credits and recaptures

| Code | Amount | | Code | Amount |
|---|---|---|---|---|
| 52a. | | 52d. | | |
| 52b. | | 52e. | | |
| 52c. | | 52f. | | |

1184071019



LEOPARD TRADING, LLC                                      20-5982750

NY IT-204-IP                    OTHER DEDUCTIONS

| DESCRIPTION | AMOUNT FROM FEDERAL SCHEDULE K-1 | NEW YORK STATE AMOUNT |
|---|---|---|
| DEDUCTIONS - PORTFOLIO (2% FLOOR) | 128. | 128. |
| TOTAL TO IT-204-IP PAGE 2, LINE 13 | 128. | 128. |

NY IT-204-IP   OTHER ITEMS REQUIRED TO BE REPORTED SEPARATELY

| DESCRIPTION | AMOUNT FROM FEDERAL SCHEDULE K-1 | NEW YORK STATE AMOUNT |
|---|---|---|
| INVESTMENT INCOME | 315. | 315. |
| INVESTMENT EXPENSES | 128. | 128. |
| TOTAL TO IT-204-IP, PAGE 2, LINE 19 | 443. | 443. |

PARTNER NUMBER 55

**CALLAGY LAW, P.C.**
Alethia Scipione 026102
668 N 44th Street, Suite 300
Phoenix, AZ 85008
Sean R. Callagy, Esq. (admitted *pro hac vice*)
Michael J. Smikun, Esq. (admitted *pro hac vice*)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, NJ 07652
Phone: (201) 261-1700
Fax:    (201) 549-6311
ascipione@callagylaw.com
msmikun@callagylaw.com
scallagy@callagylaw.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **DAVID ZOWINE,** ) | Civil Action No.: |
| **Plaintiff,** ) | |
| ) | 2:14-cv-00892-GMS |
| **v.** ) | |
| ) | |
| **GEORGE PRUSSIN and JANE DOE PRUSSIN,** ) | **DECLARATION OF** |
| **his wife.; and JOHN and JANE DOES I-X, ABC** ) | **GEORGE PRUSSIN** |
| **CORPORATIONS I-X; AB PARTNERSHIPS I-** ) | |
| **X; and ABC LIMITED LIABILITY** ) | |
| **COMPANIES I-X;** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

I, GEORGE PRUSSIN, under my oath declare as follows:

1.     I do not regularly conduct commercial activities or transactions within Arizona or

with residents of the State of Arizona.

2.     The alleged contracts at issue were not substantially performed in Arizona.

1

3.     For example, the horse portfolio did not require any services to be rendered or performed in the State of Arizona. The horse portfolio also did not contain any property located in the State of Arizona.

4.     Further, the investment that Mr. Zowine refers to as "loan pools" was an investment in a portfolio that contained contingent interests in pending litigations. This investment was not managed by me, but was instead managed by an entity referred to as The Law Funder, LLC ("Law Funder"). Although I do have an ownership interest in Law Funder, I was not a managing member.

5.     For all relevant times herein, the Law Funder was neither a resident, nor a citizen of the State of Arizona.

6.     I did not travel to Arizona to solicit Mr. Zowine to invest in any business ventures. I also did not directly solicit Mr. Zowine's investment.

7.     Notably, Mr. Zowine has been involved in litigation with my son-in-law, Marc Wichansky, for over four (4) years. Mr. Wichansky was a former business partner of Mr. Zowine. There are currently five (5) different actions pending in Arizona involving Mr. Zowine and Mr. Wichanksy including:

    a.     United States District Court action styled United States Of America, ex rel. Marc A. Wichansky v. Zoel Holding Company, Inc., et al., Docket No.: 13-1924 (On Appeal to the 9th Circuit);

    b.     United States District Court action styled Marc A. Wichansky v. David T. Zowine, et al., Docket No.: 13-1208;

    c.     Arizona State Court action styled Zoel Holding Company v. Zowine, et al., Docket No.: CV2011-002120;

    d.     Arizona Court of Appeals action styled Marc A. Wichansky v. David T. Zowine, Docket No.: 1 CA-CV 13-0137; and

    e.     Arizona State Court action styled Zoel Holding Company, Inc. et als. V. Eden, R. et al., Docket No.: CV2013-001150.

8.  To the best of my recollection, I have never had any direct contact or communication in relation with any of these investments with Mr. Zowine until _after_ Mr. Zowine made his initial investments with The Law Funder, LLC ("Law Funder Investments").

9.  I never met or communicated with Mr. Zowine in or around May 2005.

10. I have never been given anything of value from any entity or person, including Mr. Zowine, in exchange for Mr. Zowine's investments with The Law Funder, LLC, the alleged "Special Deals," or the horse portfolio.

11. Mr. Zowine was not offered any guarantees on his investments by me.

12. I had a membership interest in The Law Funder LLC. However, I was not a managing member of The Law Funder, LLC.  On behalf of The Law Funder, LLC, I did meet and discuss with my own personal network of family and friends and discuss investment opportunities in pending litigations through The Law Funder, LLC.

13. Of the approximately fifty eight (58) million dollars worth of investments made into The Law Funder LLC, I contributed at least five (5) million dollars of my own money.

14. I did not receive any bonuses, additional salary or remuneration from Law Funder related in any way to generating Mr. Zowine's investment.  I did not receive any bonuses or additional remuneration related to monies generated from obtaining investments for Law Funder during the relevant time period.

15. The investments into The Law Funder LLC, the "Special Deals" and the horse investments were never offered on the public market. They were private investments.

16. The only investors I ever spoke to and recommended these investment opportunities were family, friends, and acquaintances known or introduced to me.

17. I did not seek out an investment from Mr. Zowine. Mr. Zowine got involved in the same investments as myself because of his relationship with his then business partner, my son-in-law, Mr. Wichansky.

18. With respect to the investments through The Law Funder, LLC, there was a specific procedure that was supposed to happen in order to make an investment. Unfortunately, one of the members that participated in this process, Mel Schreiber, passed away. I was not a part of this process. It is my belief that the investor would first be provided with documents from The Law Funder, LLC, detailing the investment plan; after reviewing those documents, the investor had to fill out a subscription with The Law Funder, LLC; when The Law Funder, LLC received that subscription, it would evaluate the investor; if approved, the investor would then be permitted to invest money into The Law Funder, LLC. The investor would mail his investment to Mel Schreiber, one of the then partners of The Law Funder, LLC and who has since passed away. When Mr. Schreiber received the investment, he would log it in with The Law Funder, LLC database. The investor would then get quarterly payments based on his investments and K-1 forms annually.

4

19. I had no control or interaction with procedure described above.

20. I did not have control over the investments that were made in a "Special Deals." The investor was fully aware of where his investment was going. Otherwise, the investment itself was managed by the other partners of The Law Funder, LLC.

21. The "Special Deals" did meet underwriting approval of The Law Funder, LLC and were approved and managed by Matthew Sheldon, a managing member of the Law Funder.

22. Mr. Zowine invested in the same horse portfolio as I did because of his relationship with Mr. Wichansky. I never solicited him to invest.

23. Mr. Zowine, Brad Grossman, Mr. Wichansky, and I entered into a partnership to purchase race horses. There were two horses purchased, originally designated as Hip # 204 and Hip # 400. Hip # 204 was registered as Duke Dream, after Zowine's son. Hip # 400 was registered as Colonial Flag.

24. Duke's Dream was one-half owned by another another investor, and the other half was co-owned by our partnership: Mr. Zowine, Mr. Grossman, Mr. Wichansky, and myself. Colonial Flag was two-thirds owned by two other individuals equally, and one third owned by the above partnership.

25. Of our partnership's interest, Mr. Zowine had a one sixth interest, Mr. Grossman had a one sixth interest, Mr. Wichansky had a one third interest, and I had a one third interest in both horses.

26. The initial fees paid for the horse included the costs for the horse, the cost for one year upkeep, and the costs for one year of insurance. The costs were divided

amongst the partners based on their interest ownership of the horse. Everyone paid the costs for the first year; however, after ~~the fact~~ that Mr. Zowine ~~in the second year so he~~ did not pay for any additional costs.

27.   Instead, the horses were managed by a professional caretaker and manager.

28.   I knew little about the actual raising, training or generally taking care of a racehorse. That's why we had a professional caretaker and manager.

29.   I was involved in the very same investments that Mr. Zowine was. Consequently, I also lost a significant amount of money of my investment into the "Siber Air" case.

30.   Of the "Special Deal" investments, Mr. Zowine made a combined profit of over $100,000.00 on two of deals – the "SPS" Special Deal and the "Rubin" Special Deal.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED this 31st day of July, 2015.

George J. Prussin

George Prussin