WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Zowine,<br><br>            Plaintiff,<br><br>v.<br><br>George Prussin, et al.,<br><br>            Defendants. | No. CV-14-00892-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the Motion for Summary Judgment by Defendants George Prussin and Jane Doe Prussin (Doc. 41) and the Motion for Partial Summary Judgment by Plaintiff David Zowine (Doc. 43.) For the following reasons, the Court denies Plaintiff's motion and grants Defendants' motion.

**BACKGROUND**

In 2005, George Prussin, a resident of New Jersey, invited David Zowine, a resident of Arizona, to participate in a number of investment opportunities. In or around 2007, Zowine invested in two companies promoted by Prussin, Leopard Trading LLC and Bobcat Trading Company LLC, both of which were serviced by the Law Funder, LLC, a pre-settlement funding company that Prussin operated. Zowine also invested in three of what were termed "Special Deals" – investments in the "Siber Air" case, the "SPS v. Motorola" case, and the "Rubin Attorney for Dianna Levine" case. Zowine also purchased interests in a racehorse (the "Racehorse Deal") named Duke's Dream.[1] There

---

[1] Zowine declared that he "invested $69,138" in one horse, Duke's Dream (Doc. 40-3 at

are issues of fact as to whether the investments in the "Special Deals" involved the purchase of membership interests in the Law Funder, LLC, or whether Zowine's moneys were invested directly with Prussin. There is no issue as to whether the investment in the first two special deals was profitable, although Zowine complains that his investment in the Rubin Attorney case (while it did result in some return on capital) did not double the investment as promised. *See, e.g.,* Doc. 48 ¶ 27.  It appears that the investment in the Siber Air case was unsuccessful although it is not yet clear to the Court that the Siber Air legal matter in which the Plaintiff apparently invested has been finally resolved. The Racehorse Deal was a total loss.

On April 26, 2014, Zowine filed a complaint alleging that he invested over $100,000 and was "promised and guaranteed . . . a very high rate of return," a representation which Zowine alleges was materially false and which induced Zowine to invest to his detriment. (Doc. 1-1 at 4.) Zowine further alleges that Prussin offered and sold unregistered securities to Zowine with the intent to defraud him. (*Id.* at 6.) Zowine's complaint includes thirteen counts:

1. Count 1 – Breach of Contract (Rescission)
2. Count 2 – Breach of Contract (Return of Investment)
3. Count 3 – Breach of Warranty of Good Faith and Fair Dealing
4. Count 4 – Breach of Fiduciary Duty
5. Count 5 – Promissory Estoppel
6. Count 5 – Unjust Enrichment [There are two counts labeled "Count 5"]
7. Count 6 – Common Law Fraud
8. Count 7 – Negligent Misrepresentation
9. Count 8 – Civil Conspiracy

---

¶ 7), but the evidence in the record demonstrates that Zowine purchased (for $69,138) a one-sixth interest in Prussin's interests in two horses, "Hip #204" (Duke's Dream) and "Hip #400." (Doc. 41-8 at 3; Doc. 40-5 at 12.) At oral argument, the parties agreed that the Racehorse deal refers to only one horse, Duke's Dream, and that Zowine purchased his interest in this one horse for $69,138. Therefore, the Court accepts this as true despite the evidence in the record suggesting the contrary.

10. Count 9 – Pattern of Unlawful Acts (A.R.S. § 13-2301, et. seq.)

11. Count 10 – Violation of "Blue Sky" laws – A.R.S. § 44-1991 Fraud in Purchase or Sale of Securities

12. Count 11 – Action to Void Contract for Sale of Securities, A.R.S. § 44-2001

13. Count 12 – Constructive Fraud

(*Id.* at 6-17.)

Prussin moves for summary judgment on twelve grounds:

1. "Plaintiff's securities claims are barred by the applicable statutes of limitation." (Doc. 41 at 4-7.)

2. "Plaintiff's other claims are similarly time barred by the statute of limitations." (Doc. 41 at 7.)

3. "Plaintiff fails to establish the existence of a contract that was purportedly breached." (Doc. 41 at 7-8.)

4. "Plaintiff has failed to establish the existence of an agreement that creates an implied covenant of good faith and fair dealing or any acts establishing a breach of the implied covenant." (Doc. 41 at 8-9.)

5. "Plaintiff has failed to cite to any statute, rule or case which would create a fiduciary duty and has further failed to assert any acts on the part of Prussin that would have violated that fiduciary duty." (Doc. 41 at 9-10.)

6. "Plaintiff has failed to establish many of the key elements of promissory estoppel and unjust enrichment." (Doc. 41 at 10-11.)

7. "Plaintiff has failed to establish the elements of common law fraud, constructive fraud or negligent misrepresentation." (Doc. 41 at 11-12.)

8. "Plaintiff has failed to establish the elements for civil conspiracy." (Doc. 41 at 12-13.)

9. "Plaintiff has failed to establish a violation of A.R.S. 13-2301 [Racketeering]" (Doc. 41 at 13-14.)

10. "Plaintiff has failed to establish a violation of the 'Blue Sky' laws and has also failed to establish the elements to void a contract pursuant to A.R.S. 44-2001." (Doc. 41 at 14-15.)

11. "Defendant is the improper party for the claims made by Plaintiff regarding the purported loan pools as Arizona courts recognize an LLC as a separate legal entity and shareholders    and members are not liable for their debts." (Doc. 41 at 15-17.)

12. "Plaintiff has failed to provide any evidence that he sustained any damages as a result of   [Defendant's] conduct." (Doc. 41 at 17-18.)

Zowine moves for partial summary judgment on three grounds:

1. "The investment contracts offered and sold to Plaintiff by [Defendant] are 'securities' as defined under Arizona law." (Doc. 43 at 5-12.)

2. "Defendant . . . has engaged in the unlawful offer and sale of unregistered securities." (Doc. 43 at 12-13.)

3. "Defendant . . . is liable as a matter of law under Plaintiff's civil RICO claim." (Doc. 43 at 13-14.)

## DISCUSSION

### I.   Legal Standard

The Court grants summary judgment when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When determining whether summary judgment is appropriate, the Court views the evidence "in a light most favorable to the non-moving party." *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

**II.     Analysis**

    **A.     Statutes of Limitations**

"Whether a particular statute of limitations applies to any given action is a matter of law." *Occhino v. Occhino*, 164 Ariz. 482, 484, 793 P.2d 1149, 1151 (App. 1990). Under Arizona law, a statute of limitations defense is not favored, and "if there is doubt as to which of two limitations periods should apply, courts generally apply the longer." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 590, 898 P.2d 964, 968 (1995).

"[A] cause of action accrues, and the statute of limitations commences, when one party is able to sue another." *Id.* at 588, 898 P.2d at 966. "Under the 'discovery rule,' a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Id.* "The rationale behind the discovery rule is that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." *Id.* at 589, 898 P.2d at 967. "[T]he statute of limitations serves to protect defendants and courts from stale claims where plaintiffs have slept on their rights." *Id.* at 590, 898 P.2d at 968. "[A] blamelessly uninformed plaintiff cannot be said to have slept on his rights." *Id.* at 591, 898 P.2d at 969.

Prussin argues that although no Arizona court has adopted the "storm warning" analysis, this analysis "should be applied in Arizona." (Doc. 41 at 4-5). However, even if this Court were to determine that the "storm warning" analysis applied to Arizona law, a "storm warning" does not begin to run the clock on a statute of limitations:

> In determining the time at which "discovery" . . . occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation," . . . — irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.

- 5 -

*Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). Thus, even assuming *arguendo* that the "storm warning" analysis applies to Arizona law, "the ultimate burden is on the defendant to demonstrate that a reasonably diligent plaintiff would have *discovered* the facts constituting the violation." *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012).

"When discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury." *Doe v. Roe*, 191 Ariz. 313, 323, 955 P.2d 951, 961 (1998); *see also Walk v. Ring*, 202 Ariz. 310, 316, 44 P.3d 990, 996 (2002).

### 1. Statute of Limitations on Zowine's Securities Claims

Section 44-2004(B) of the Arizona Revised Statutes provides the statute of limitations for "any liability based on a violation of article 13 of [Chapter 12, Sales of Securities]." The first section of article 13 is A.R.S. § 44-1991 (Fraud in Purchase or Sale of Securities), and therefore the statute of limitations for a violation of § 44-1991 is "two years after discovery of the fraudulent practice on which the liability is based, or after the discovery should have been made by the exercise of reasonable diligence." A.R.S. § 44-2004(B).

Count 10 of the Complaint (Violation of "Blue Sky" Laws) seeks relief under the private right of action established by A.R.S. § 44-1991(A) (expressly recognized in § 44-1991(B)), and thus the statute of limitations for Count 10 is two years after discovery of the fraud. A.R.S. § 44-2004(B).

Count 11 of the Complaint (Action to Void Contract for Sale of Securities) seeks rescission under A.R.S. § 44-2001(A), which provides that "[a] sale or contract for sale of any securities to any purchaser in violation of § 44-1841 or 44-1842 or article 13 of this chapter is voidable at the election of the purchaser." Zowine concedes that his "claim for rescission under § 44-2001(A), to the extent it is based on an alleged violation of A.R.S. § 44-1841, is time barred by A.R.S. § 44-2004(A)." (Doc. 50 at 3.) Section 44-2004 provides that "[n]o civil action shall be maintained under this article to enforce any

1  liability based on a violation of § 44-1841 or 44-1842 unless brought within *one year
2  after the violation occurs*" (emphasis added).   Section 44-1841 prohibits selling
3  unregistered securities.  Thus, to the extent that Count 11 of the Complaint is based on an
4  allegation that Prussin sold him unregistered securities, his claim is time-barred.
5  However, to the extent that Zowine's claim for rescission is based on an alleged violation
6  of A.R.S. § 44-1991(A), the statute of limitations for Count 11 is two years after
7  discovery of the fraud, pursuant to § 44-2004(B).

8  As such, Zowine's securities claims based on fraud in the sale of securities are not
9  barred by the applicable statute of limitation unless he discovered (or should have
10 discovered) the fraud more than two years prior to filing the present lawsuit.  A.R.S. §
11 44-2004(B).  The parties dispute the material fact of when discovery occurred or should
12 have occurred.

13 Prussin claims that "Plaintiff was aware of potential problems as early as 2009,"
14 (Doc. 41 at 6, citing Doc. 41-4, Exh. C, a Schedule K-1 form), that public documents
15 "identified issues related to the Law Funder's investments as early as November 2009"
16 (Doc. 41 at 6), and that "the Letter from [Defendant] to investors dated October 1,
17 2009 . . . is clearly a 'storm warning.'"  (Doc. 41 at 7; citing Doc. 41-5, Exh. D.)  Prussin
18 failed to identify in the record any public documents identifying "issues" with the Law
19 Funder investments, and the K-1 form and October 1, 2009 letter do not conclusively
20 establish that Zowine discovered or should have discovered that his cause of action had
21 accrued.  *Cf. Thompson v. Pima Cty.*, 226 Ariz. 42, 46-47, 243 P.3d 1024, 1028-29 (App.
22 2010) (holding that a trial court did not err in granting summary judgment on a statute of
23 limitations defense where plaintiffs "unquestionably were aware of the necessary facts
24 underlying their cause of action" as of a certain date, thereby establishing that "there was
25 no genuine issue of material fact" as to when discovery should have occurred).

26 Zowine contends that the earliest he reasonably could have discovered that a cause
27 of action had accrued was March 29, 2013, when Prussin emailed Zowine to notify him
28 that certain investments were a total loss.  (Doc. 50 at 7.)  Zowine filed his complaint on

April 26, 2014, within two years after his receipt of the March 29, 2013 email.

Because a genuine dispute of material fact exists regarding when Zowine's cause of action accrued, the Court denies summary judgment on Prussin's statute of limitations defense regarding claims alleging securities fraud (Count 10 and, to the extent it is based on allegations of securities fraud, Count 11)..

### 2. Statute of Limitations on Zowine's Other Claims

Prussin further argues that Zowine's "other claims are similarly time barred by the statute of limitations." (Doc. 41 at 7.) Prussin's entire argument on this point consists of one sentence: "Plaintiff's other counts must be dismissed because Defendant [sic] knew or should have known of the purported improprieties that gave rise to their Complaint on or before 2009." *Id.* Prussin entirely failed to support this claim with any discussion or citation to the record. Moreover, Prussin cited what he considered to be the applicable statutes of limitations for the various claims, each of which provides a period of two or more years after accrual of the cause of action. Therefore, the Court denies summary judgment on Prussin's statute of limitations defense regarding Zowine's other claims.

### B. Existence of a Contract

"To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975). The plaintiff's "burden at the summary judgment stage is not to *prove* the existence of such a promise but only to introduce evidence that, when viewed in the light most favorable to [him or] her, suffices to render the issue a triable question of fact for the *jury* to decide"—a burden which is "significantly less onerous." *Schneider v. TRW, Inc.*, 938 F.2d 986, 998 n.5 (9th Cir. 1991). Nonetheless, a plaintiff "must establish a prima facie case sufficient to allow a jury to infer the existence of a promise." *Id.* at 998. To establish the element of breach, the jury must be able to infer "a failure, without legal excuse, to perform any promise which forms the whole or part of a contract." *Snow v. W. Sav. & Loan Ass'n*, 152 Ariz. 27, 32, 730 P.2d 204, 210 (1986).

1       Here, Zowine alleges that he and Prussin entered into oral contracts pursuant to
2  which Zowine made investments in exchange for Prussin's promises of high returns.
3  (Doc. 50 at 8.)  Zowine has cited to paragraphs within his "Controverting Statement of
4  Facts" ("CSOF," Doc. 48), which in turn cite documents establishing that he made the
5  investments, a fact which the parties do not dispute. (*Id.*)  These documents do not bear
6  directly on whether Prussin made oral promises of high returns.  The cited paragraphs in
7  Zowine's CSOF also cite to "Declaration of David Zowine" ("Zowine Decl.," Doc. 41-3)
8  and "Plaintiff's Declaration in Support of Partial Summary Judgment" ("Pltfs. Decl.,"
9  Doc. 40-3).

10      Zowine asserted in his "Zowine Declaration" that Prussin met with him "to solicit
11 funds for two different investments." (Zowine Decl., Doc. 41-3 at ¶ 5.)  The first was for
12 "Lawfunders," and the second was for "special or side deals." (*Id.*)  The "Lawfunders"
13 were investments "in two companies [Prussin] was . . . promoting: Leopard Trading LLC
14 and Bobcat Trading Company LLC."[2] (Pltfs. Decl., Doc 40-3 at ¶¶ 4-5.)  The second
15 investment opportunity consisted of "certain litigation funding opportunities in individual
16 specific cases . . . referred to by Mr. Prussin as 'Special Deals.'" (*Id.* at ¶ 6.)  Zowine
17 alleged that he was promised "double or more the original investment" for both the
18 "Lawfunders" and the "Special Deals" investment opportunities.  (Zowine Decl., Doc.
19 41-3 at ¶ 5.)

20      Regarding the "Lawfunders" investment, Zowine invested in two LLCs by
21 purchasing memberships in them, and such a purchase does not establish a contract with
22 Prussin.  Zowine provides no evidence that in the course of such investment he entered
23 any separate contract with Prussin.  He identifies no consideration that he gave Prussin
24 separate from the membership purchase, nor did Prussin personally promise to perform
25 for the benefit of Zowine.  If Zowine's investment contract in an LLC was breached,
26 Zowine must sue the LLC, not Prussin.  Because Zowine has failed to establish the

---

[2] The parties clarified at oral argument that the Law Funder, LLC, "services" Leopard Trading LLC and Bobcat Trading Company LLC. Zowine never invested in the Law Funder, LLC, itself.

1 existence of a contract with Prussin regarding the LLCs, Zowine's claims for breach of
2 contract under Count 1 and Count 2 both fail as to the LLC investments.

3       To the extent that Zowine alleges the existence of an oral contract pursuant to
4 which Prussin promised a return of "double or more the original investment" if Zowine
5 invested in "Special Deals," the terms of the alleged oral contract are unclear—that is,
6 Zowine fails to clarify what Prussin promised to *do*.  There is no indication that there was
7 an offer that involved an obligation on Prussin's part.  In the absence of any evidence that
8 Prussin had some personal obligation with respect to Zowine's investment for which he
9 received consideration, the Court will not presume that he did, and therefore the Court
10 does not perceive that Prussin undertook an obligation to perform, as is requisite under
11 the basic rules of contract law.  "For an enforceable contract to exist, there must be an
12 offer, an acceptance, consideration, and sufficient specification of terms so that
13 obligations involved can be ascertained."  *Contempo Const. Co. v. Mountain States Tel.*
14 *& Tel. Co.*, 153 Ariz. 279, 281, 736 P.2d 13, 15 (App. 1987).

15       Moreover, Zowine has not established damages in regard to the "Special Deals"
16 and therefore has not made out a prima facie case for breach of contract.  The "Special
17 Deals" consisted of three investments.  One performed as well as allegedly promised,
18 providing a return of double or more the investment; one provided some return but less
19 than double the investment, and one, Zowine alleges, was (or is likely to be) a total loss.
20 (CSOF, Doc. 48 at ¶ 27.)  In combination, the return on the "Special Deals" may or may
21 not have been double or more the original investment.  To establish a prima facie case,
22 Zowine had the burden of establishing evidence sufficient to support a verdict *either* that
23 the "double or more" promise was made for each individual investment in the "Special
24 Deals" opportunity *or* that the total investment returned less than promised.  He failed to
25 meet either burden.  *Celotex*, 477 U.S. at 324 ("Rule 56(e) permits a proper summary
26 judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule
27 56(c), except the mere pleadings themselves, and it is from this list that one would
28 normally expect the nonmoving party to make the showing to which we have referred.").

1  Regarding the "Racehorse" deal, Zowine alleges that he had an "investment
2 contract" in a racehorse, and Prussin promised him that "even if the horse did not repay
3 the investment and a substantial profit from racing, that the fees from breeding would
4 produce a guaranteed profit of 3-4 times the investment." (Doc. 50 at 9; CSOF at ¶ 36;
5 Zowine Decl. at ¶ 11.) With this investment, like the "Special Deals" investment, the
6 terms of the alleged oral promise are unclear. Zowine has not established what Prussin
7 was obligated to do or how Prussin failed to perform on the Racehorse deal. Prussin's
8 alleged assurance that Duke's Dream's breeding fees would produce a "guaranteed"
9 profit amounts to mere puffery, not an actionable statement of fact. Courts "may
10 determine as a matter of law whether [an] alleged misrepresentation is a statement of fact
11 . . . or mere puffery." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
12 911 F.2d 242, 245 (9th Cir. 1990). "Guarantees, and assurances of success generally, are
13 merely 'puffery,' and therefore are not actionable." *Metzner v. D.H. Blair & Co.*, 689 F.
14 Supp. 262, 264 (S.D.N.Y. 1988) (holding that statements that stocks were "guaranteed"
15 to recover were not actionable) (cited favorably in *Cook*, 911 F.2d at 245). "It is beyond
16 the realm of reason to assert . . . that a reasonable [investor] would interpret this as a
17 factual claim upon which he or she could rely." *Cook*, 911 F.2d at 246. It does not take
18 expertise in horses but merely common sense to realize that any given animal may or
19 may not successfully produce offspring.

20  "[I]n establishing a prima facie case," a plaintiff must establish "the existence of
21 the contract . . . , the breach of the same, and the resulting damages." *Clark v. Compania*
22 *Ganadera de Cananea, S.A.*, 95 Ariz. 90, 94, 387 P.2d 235, 238 (1963). Each of
23 Zowine's breach of contract claims fails to establish the existence of a contract.
24 Therefore, Zowine's breach of contract claims (Counts 1 and 2) fail as a matter of law.
25 Because Count 3 of the Complaint (breach of warranty of good faith and fair deal)
26 depends upon the existence of a contract, that claim fails as well.

27 / / /
28 / / /

### C.     Existence of Fiduciary Duty

Zowine has failed to make a prima facie case that a fiduciary relationship exists between the parties. (Doc. 41 at 9-10.)

"To establish a fiduciary (confidential) relationship there must be something approximating business agency, professional relationship, or family tie." *Rhoads v. Harvey Publications, Inc.*, 145 Ariz. 142, 149, 700 P.2d 840, 847 (App. 1984) (holding that "[o]bviously there was no fiduciary relationship" where the parties had "a business relationship . . . coupled with some social contacts over . . . 23 years" but where there was "no great intimacy, disclosure of secrets, or entrusting of power"). "[A]s a matter of law . . . no confidential relationship can be found to have existed between the parties" where one party "was neither a relative, confidant, nor advisor of [the other party] and they operated at arm's length throughout all of their dealings." *Brazee v. Morris*, 68 Ariz. 224, 229, 204 P.2d 475, 477-78 (1949).

"[W]hether a confidential relationship exists is generally a question of fact[;] [h]owever, this rule applies only if there is sufficient evidence to submit the issue to the jury: When the evidence is insufficient to support a verdict, the trial court has a duty to decide the issue." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 504-05, 917 P.2d 222, 233-34 (1996) (internal quotations and citations omitted).

Here, Zowine contends that "his confidential relationship with [Prussin] was an extension of the confidential relationship developed with his long time former business partner, who is [Prussin's] son-in-law." (Doc. 50 at 10.) Zowine does not cite to any law suggesting that a confidential relationship with one person extends to create a confidential relationship with that person's father-in-law. Prussin shares a family tie with his son-in-law, but not with Zowine.

Zowine further contends that Prussin had specialized knowledge in the business matters at issue which Zowine lacked. (*Id.*) Regardless of whether this is true, the parties operated at arm's length, and Zowine fails to allege facts suggesting that any "great intimacy, disclosure of secrets, or entrusting of power" existed between the parties.

*Rhoads*, 145 Ariz. at 149, 700 P.2d at 847.

The Court therefore grants Prussin's motion for summary judgment on whether a fiduciary relationship existed between the parties, and dismisses Count 4 of Plaintiff's Complaint (Breach of Fiduciary Duty). Count 12 of Plaintiff's Complaint (Constructive Fraud) likewise fails as a matter of law because "[c]onstructive fraud . . . requires the existence of a fiduciary or confidential relationship." *Lasley v. Helms*, 179 Ariz. 589, 592, 880 P.2d 1135, 1138 (App. 1994).

### D. Promissory Estoppel

"[P]romissory estoppel rests upon a promise to do something in the future . . . and is to be applied . . . if injustice can be avoided [o]nly by enforcement of the promise." *Trollope v. Koerner*, 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970). It requires "a justifiable right to rely on the part of the representee or promisee." *Id.*

Here, even assuming Prussin assured Zowine that the investment in the horses and the Siber Air case would be successful, Zowine has not established that he had a right to rely on the promise. *See* Doc. 50 at 11-12 (failing to assert a reason why Zowine was justified in relying on Prussin's alleged promise). Reliance is justified only when it is reasonable. *Higginbottom v. State*, 203 Ariz. 139, 144, 51 P.3d 972, 977 (App. 2002). A reasonable person knows that investments involve risk, and a "promise" that an investment will reap high returns cannot amount to more than a prediction. As such, Zowine's promissory estoppel claim fails as a matter of law, and the Court grants Prussin's motion for summary judgment on this issue. *See id.* (affirming trial court's grant of summary judgment in favor of defendants on claim of promissory estoppel where plaintiff was "could not have reasonably relied on what he allegedly perceived as the promise of a full five-year term [of employment]" because he knew he served at the pleasure of the governor); *Carondelet Health Servs. v. Arizona Health Care Cost Containment Sys. Admin.*, 187 Ariz. 467, 470, 930 P.2d 544, 547 (App. 1996) (finding that it would not be reasonable for plaintiff to rely on a statement that defendant wanted an event to occur when defendant did not state it was "assuming responsibility" for the

event occurring); *Brundage-Bone Concrete Pumping, Inc. v. Concord Commercial Div. of HSBC Bus. Loans, Inc.*, 45 F. App'x 595, 597 (9th Cir. 2002) ("[S]tatements by the loan officer, such as 'no one would disagree that a concrete pump isn't worth at least what you're buying it for,' could not reasonably be viewed as an affirmative promise as to how [a third party] would appraise the collateral. Even if it could be so viewed, [plaintiff] could not have justifiably relied on such a promise because it knew the loan officer lacked lending authority.").

### E. Unjust Enrichment

"An unjust enrichment claim requires proof of five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, 283 P.3d 45, 49 (App. 2012). "In short, unjust enrichment provides a remedy when a party has received a benefit at another's expense and, in good conscience, the benefitted party should compensate the other." *Id.*

Zowine claims that "the evidence described thoroughly *supra* demonstrates that Plaintiff certainly enriched Defendant with his investments and thereafter suffered an impoverishment through substantial financial loss." (Doc. 50 at 12.) However, there is no indication in the record, nor does Zowine allege, that Prussin has grown wealthier as a result of Zowine's investment losses. Zowine has not identified any benefit that Prussin has received at Zowine's expense or why justice dictates that Prussin should compensate Zowine for his investment losses. Zowine's unjust enrichment claim fails as a matter of law, and therefore the Court grants Prussin's motion for summary judgment on this issue.

### F. Common Law Fraud

"A civil claim for fraud is established by showing that the tortfeasor made a false and material representation, with knowledge of its falsity or ignorance of its truth, with intent that the hearer would act upon the representation in a reasonably contemplated manner, and that the hearer, ignorant of the falsity of the representation, rightfully relied

- 14 -

upon the representation and was thereby damaged." *Dawson v. Withycombe*, 216 Ariz. 84, 96, 163 P.3d 1034, 1046 (App. 2007) (emphasis omitted).

Here again, even assuming Prussin assured Zowine that his investments would be successful, Zowine has not established that he had a right to rely on such a promise. *See* Doc. 50 at 13 (failing to assert a reason why Zowine was justified in relying on Prussin's alleged promise). As noted above, the Court has determined as a matter of law that the assurances of success Prussin allegedly made constitute puffery, not actionable statements of fact. *See Cook*, 911 F.2d at 245-46; *Metzner*, 689 F. Supp. at 264.

The Court therefore grants Prussin's motion for summary judgment on Zowine's common law fraud claim.

### G. Negligent Misrepresentation

"A person may be liable for negligent misrepresentation if he fails to exercise reasonable care and competence in obtaining or communicating information and thereby, in the course of his business or employment, provides false information for the guidance of others in their business transactions, causing the recipients of the information to incur damages because they justifiably relied on the false information." *PLM Tax Certificate Program 1991-92, L.P. v. Schweikert*, 216 Ariz. 47, 50, 162 P.3d 1267, 1270 (App. 2007).

As noted above, even assuming that Prussin assured Zowine that his investments would be successful, Zowine has not established that he was justified in relying on such an assurance. *See* Doc. 50 at 14-15 (failing to assert a reason why Zowine was justified in relying on Prussin's alleged promise). The Court therefore grants Prussin's motion for summary judgment on Zowine's negligent misrepresentation claim.

### H. Civil Conspiracy

"[L]iability for civil conspiracy requires that two or more individuals agree and thereupon accomplish "an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002), *as corrected*

1 (Apr. 9, 2002).

2 Zowine alleges that "Prussin conspired with *Safari* and *TLF* to defraud or
3 negligently induce [Zowine] into investing in the *TLF* and *Special Deals* investment
4 contracts." (Doc. 50 at 15.) Zowine points to no evidence in the record to support this
5 allegation. Thus, the Court grants Prussin's motion for summary judgment on the claim
6 of civil conspiracy.

### I.     Racketeering

Racketeering under Arizona law (Arizona RICO) is defined as "any act, including any preparatory or completed offense, that is chargeable or indictable under the laws of the state or country . . . , and that would be punishable by imprisonment for more than one year under the laws of this state . . . and the act involves" any of the offenses in an enumerated list, including "(xix) Intentional or reckless sale of unregistered securities or real property securities." A.R.S. § 13-2301(D)(4).

Arizona Revised Statutes section 13-2314.04(A) establishes a civil action for those injured by "a pattern of racketeering activity":

> A person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of § 13-2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages and the costs of the suit, including reasonable attorney fees for trial and appellate representation. . . . No person may rely on any conduct that would have been actionable as fraud in the purchase or sale of securities to establish an action under this section except an action against a person who is convicted of a crime in connection with the fraud, in which case the period to initiate a civil action starts to run on the date on which the conviction becomes final.

A "pattern of racketeering activity" is established by "at least two acts of racketeering," where "[t]he last act of racketeering activity that is alleged as the basis of the claim occurred within five years of a prior act of racketeering" and where "[t]he acts of racketeering that are alleged as the basis of the claim were continuous or exhibited the threat of being continuous." A.R.S. § 13-2314.04(T)(3)(a). To be "continuous," the acts must be spread out "'over a substantial period of time,' i.e., over more than 'a few weeks or months.'" *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 198 Ariz. 149,

152-53, 7 P.3d 158, 161-62 (App. 2000) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)).

Zowine "alleges that he was foreseeably injured by [Prussin's] sale of unregistered securities" and asserts that "predicate acts of unlawful sale of securities have occurred within five years of each other." (Doc. 50 at 16.) This assertion is vague, conclusory, and unsupported by any citation to the record. Zowine fails to identify when the alleged other acts occurred, to whom, whether there was a conviction,[3] or any other relevant details.

Zowine's racketeering claim therefore fails, and the Court grants Prussin's motion for summary judgment on this claim.

### J.     Violation of "Blue Sky" Laws

Zowine alleges that Prussin violated Arizona's "Blue Sky" laws by committing fraud in the sale of securities. *See* A.R.S. § 44-1991(A)(2). Prussin claims that Zowine has not established that Prussin made the misleading statements necessary to establish fraud. (Doc. 41 at 15.)

Under Arizona law, "the task of proving securities fraud [is] much simpler than proving common-law fraud," as common law fraud has nine elements, including damages, which are not required to prove securities fraud. *Aaron v. Fromkin*, 196 Ariz. 224, 227, 994 P.2d 1039, 1042 (App. 2000). A plaintiff's "burden of proof requires only [demonstrating] that the statements were material and misleading." *Id.* To establish that the statements were material, "a plaintiff must show that the statement or omission would have assumed actual significance in the deliberations of the reasonable buyer." *Id.* To establish that the statements were misleading, "[t]he speaker's knowledge of the falsity of the statements is not a required element." *Id.* "The statute instead imposes only an affirmative duty not to mislead." *Id.*

---

[3] The applicable statute for Zowine's Arizona RICO claim provides that "[n]o person may rely on any conduct that would have been actionable as fraud in the purchase or sale of securities to establish an action under this section except an action against a person who is *convicted of a crime* in connection with the fraud." A.R.S. § 13-2314.04(A). Nothing in the evidence suggests that Prussin has ever been convicted of any such crime.

- 17 -

Here, as the Court explained in subsections B, D, F, and G, *supra*, Zowine has not pointed to any evidence in the record suggesting that Prussin made misleading material statements of fact as opposed to mere puffery. *Zack v. Allied Waste Indus., Inc.*, No. CIV04-1640PHXMHM, 2005 WL 3501414, at *9 (D. Ariz. Dec. 15, 2005) *aff'd,* 275 F. App'x 722 (9th Cir. 2008) ("Puffing generally is defined as exaggerated, vague, or loosely optimistic statements about a company that are deemed so immaterial and unworthy of reliance that they cannot serve as the basis for liability in securities fraud actions."); *In re Action Performance Companies Inc. Sec. Litig.*, No. 05-2512PHXDGC, 2007 WL 496770, at *8 (D. Ariz. Feb. 13, 2007) ("Vague, amorphous statements are not actionable because reasonable investors do not consider 'soft' statements or loose predictions important in making investment decisions."); *Ellis v. First Nat. Bank*, 19 Ariz. 464, 471, 172 P. 281, 284 (1918) ("What is commonly called 'puffing' or 'trade talk' is always allowed, provided it is kept within reasonable limits."). As such, Prussin's motion for summary judgment is granted on Count 10 of the Complaint ("Violation of 'Blue Sky' laws – A.R.S. § 44-1991 Fraud in Purchase or Sale of Securities"). Count 11 of the Complaint ("Action to Void Contract for Sale of Securities") also fails as a matter of law, as it is based on a violation of section 44-1991, i.e., the same conduct at issue in Count 10.

### K. Zowine's Motion for Partial Summary Judgment

Zowine moves for partial summary judgment on his claims "(1) that the actions and omissions of [Prussin], as alleged, constitute the sale of unregistered securities under Arizona law; and (2) that [Prussin] is liable under Plaintiff's Arizona civil RICO claim for engaging in a pattern of unlawful activity relating to his sale of unregistered securities." (Doc. 43.) Because Zowine's claims based on the sale of unregistered securities are time-barred, *see supra* subsection A.1, and because Zowine has not established a prima facie claim under Arizona civil RICO, *see supra* subsection I, Zowine's motion for summary judgment is denied.

### L. Attorney Fees

"In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01. Prussin requests attorney fees, noting that Zowine "has presented no evidence to support the essential elements of [his] claims." (Doc. 63 at 17.) The Court agrees and awards Prussin reasonable attorney's fees upon compliance with LRCiv 54.2.

## CONCLUSION

Zowine's claims are not barred by the applicable statutes of limitations, with the exception of Count 11 to the extent that it is based on the sale of unregistered securities. However, all of the claims in his Complaint fail as a matter of law.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment by Defendants George Prussin and Jane Doe Prussin (Doc. 41) is **GRANTED**

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment by Plaintiff David Zowine (Doc. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that the Complaint is **DISMISSED** with prejudice. The Clerk of Court is directed to enter judgment accordingly.

Dated this 12th day of February, 2016.

Honorable G. Murray Snow
United States District Judge